James NEWCOMB, Plaintiff-Appellant,

v.

James BRENNAN and Henry Reuss, Defendants-Appellees.

No. 77–1006.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1977.

Decided July 11, 1977.

---

Robert E. Sutton, Milwaukee, Wis., for plaintiff-appellant.

Robert H. Friebert, Patrick B. McDonnell, Asst. City Atty., Milwaukee, Wis., for defendants-appellees.

Before SWYGERT and CUMMINGS, Circuit Judges, and MARKEY, Chief Judge.[1]

SWYGERT, Circuit Judge.

Plaintiff James Newcomb contends that his constitutional rights were violated when he was dismissed from his position as deputy city attorney of Milwaukee, Wisconsin.

---

1. The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

Newcomb was dismissed when, against the wishes of the city attorney, he announced his intention to run for Congress. We affirm the district court's dismissal of the complaint.

## I.

In April 1976 Newcomb was employed by the City of Milwaukee as deputy city attorney. His superior was defendant James Brennan, the city attorney of Milwaukee. Newcomb informed Brennan that he intended to run in the Democratic Party's primary election for the office of representative from the Fifth District to the Congress of the United States, a post then held by defendant Henry Reuss. After allegedly consulting with Reuss, Brennan informed plaintiff that he disapproved of the candidacy and that plaintiff would be fired if he persisted in his plans to run for office. Following the formal announcement of plaintiff's candidacy and upon his continued refusal to withdraw from the race, Brennan fired plaintiff on May 3, 1976.

Newcomb then filed suit against Brennan and Reuss seeking injunctive and monetary relief for deprivation of his constitutional rights under 42 U.S.C. §§ 1983 and 1985. The district court granted a motion to dismiss the action on November 15, 1976, stating that plaintiff's discharge did not constitute a deprivation of his constitutional rights. The court acknowledged the general rule, established in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Illinois State Union Council 34 v. Lewis*, 473 F.2d 561 (7th Cir. 1972), that the dismissal of public employees for reasons of political patronage violates the First Amendment. The court noted, however, that both *Elrod* and *Lewis* created an exception to this general rule for public employees who occupy policymaking positions, and it held that plaintiff fell within this exception. It observed that the deputy city attorney is exempted from civil service,[2] has no term of office that is established in the City Charter, and has broad powers and duties described in both the City Charter[3] and the Milwaukee Code of Ordinances.[4]

2. Wis.Stat. § 63.29(1) provides:
 *Civil Service for attorneys in office of city attorney.*
 (1) In any city of the first class the common council may by ordinance provide for civil service in the office of the city attorney except for the city attorney and his deputy.

3. Milw. City Charter § 3.03 reads:
 3.03 *City attorney, duties and powers.* The city attorney shall conduct all the law business of the corporation and of the departments thereof, and all other law business in which the city shall be interested, when so ordered by the common council. He shall, when required, furnish written opinions upon subjects submitted to him by the mayor or the common council, or any of its committees, or any other department of the municipal government. He shall keep a docket of the cases to which the city may be a party in any court of record as directed by the common council, in which shall be briefly entered all steps taken in each cause, and which shall, at all times, be open to the inspection of the mayor, comptroller, or any committee of the common council. It shall also be the duty of the city attorney to draft all ordinances, bonds, contracts, leases, conveyances, and other such instruments of writing as may be required by the business of the city; to examine and inspect tax and assessment rolls, and all proceedings in reference to the

levying and collection of taxes and assessments; and to perform such other duties as may be prescribed by the charter and ordinances of the city. He shall have power to appoint a deputy city attorney, who shall be authorized to do all acts required by law of the city attorney. Assistant city attorneys appointed by the city attorney pursuant to city service laws and provisions shall be authorized, subject to the control and supervision of the city attorney or his deputy to do all acts required by law of the city attorney; provided that the city attorney shall be responsible to the city for all the acts of such deputy city attorney and assistant city attorneys.

4. Milw. Code of Ordinances § 2–200.2(2) provides:
 DEPUTY CITY ATTORNEY.
 There is hereby created the position of deputy city attorney who shall be appointed by the city attorney and such position shall not be under civil service, and the city attorney shall be responsible for all the acts of such deputy city attorney. The deputy city attorney may be selected from among the assistant city attorneys in the office of the city attorney and, if so selected from among such group, while serving as deputy city attorney, such assistant shall continue to retain his

From this judicial notice of matters of public record, the court found that the deputy city attorney occupies a policymaking position and serves at the pleasure of the city attorney. Plaintiff now appeals the district court's decision.

## II.

The gravamen of plaintiff's case is that his right to run for political office was protected under the First Amendment and that defendants abridged that right by causing him to be fired because he exercised it. The district court assumed that plaintiff's act of running for Congress was protected under the First Amendment and dismissed the complaint because it found, under the teaching of *Elrod* and *Lewis*, that the state's interest in permitting the city attorney to dismiss his subordinate for political reasons was of sufficient importance to justify the abridgment of plaintiff's First Amendment rights. Because we believe there is a substantial question whether the First Amendment encompasses plaintiff's interest in running for political office, we must resolve this issue before addressing the district court's reasons for dismissing the action.

Although the Supreme Court has frequently invalidated state action which infringed a candidate's interest in seeking political office, it "has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review." *Bullock v. Carter*, 405 U.S. 134, 142–43, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972). Rather, it has relied on the right of association guaranteed by the First Amendment in holding that state action which denies individuals the freedom to form groups for the advancement of political ideas, as well as the freedom to campaign and vote for the candidates chosen by those groups, is unconstitutional absent a strong subordinating interest. *See, e. g., Buckley v. Valeo*, 424 U.S. 1, 39–59, 96 S.Ct. 612, 46

L.Ed.2d 659 (1976) (*per curiam*); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). These decisions indicate that plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection. *See Developments in the Law—Elections*, 88 Harv.L.Rev. 1111, 1135 n. 81, 1218 (1975). Moreover, since plaintiff has not alleged that by running for Congress he was advancing the political ideas of a particular set of voters, he cannot bring his action under the rubric of freedom of association which the Supreme Court has embraced.

We would therefore have to affirm the dismissal of the complaint without ever reaching the ground on which the district court relied if plaintiff's First Amendment claim was based solely on a purported right to seek public office. As we read the complaint, however, it implicates interests which are broader than a *per se* right to candidacy. This is not a case where the plaintiff was denied access to the ballot as a result of the state's administration of a facially neutral program regulating elections. *See, e. g., American Party v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). Instead it is a case where the plaintiff's candidacy was burdened because a state official wished to discourage that candidacy in particular. Accordingly, if we assume that the allegations contained in the complaint are true, Brennan's conduct in firing plaintiff because Brennan disapproved of plaintiff's candidacy represented punishment by the state based on the content of a communicative act. The Supreme Court has repeatedly struck down state action regulating the content of expression. *E. g., Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). *See also Hudgens v. NLRB*, 424 U.S. 507, 520, 96 S.Ct.

civil service status and tenure provided for in this ordinance. The deputy city attorneys shall be required to take the oath of office as provided in the charter and may perform all

duties and have all responsibility which are imposed by law in the ordinances and charter ordinances of the city on the city attorney.

1029, 47 L.Ed.2d 196 (1976). Thus, plaintiff's interest in running for Congress and thereby expressing his political views without interference from state officials who wished to discourage the expression of those views lies at the core of the values protected by the First Amendment.

■ We conclude that under the circumstances of this case plaintiff's interest in seeking office was protected by the First Amendment. Moreover, *Elrod* made clear that the state has no greater power to dismiss a public employee because he exercised a First Amendment right than it has to directly restrain free expression. 427 U.S. at 358–59, 96 S.Ct. 1029. *See also Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Therefore, the dismissal of the complaint can only be affirmed if the state's interest in permitting the city attorney to fire his deputy for political reasons is of sufficient importance to justify the infringement of plaintiff's First Amendment rights.

### III.

#### A.

The district court's decision that in this case the state's interest outweighed individual rights turned on a finding that plaintiff was a policymaker. Plaintiff contends first that the district court erred in making this determination because it took judicial notice of facts not alleged in the complaint. He argues that on a motion to dismiss the court may consider matters outside the complaint only if these matters have been affirmatively presented to the court by the litigants. If the court decides not to exclude these matters, he asserts, it must then treat the motion as one for summary judgment and give the parties adequate opportunity to present pertinent material.

■ We cannot accept this argument. A court may take judicial notice of facts of "common knowledge" in ruling on a motion to dismiss. *Robinson v. Mammoth Life & Accident Ins. Co.*, 454 F.2d 698, 699 (7th Cir.

1971) (*per curiam*), *cert. denied,* 409 U.S. 872, 93 S.Ct. 202, 34 L.Ed.2d 123 (1972). We hold that matters of public record such as state statutes, city charters, and city ordinances fall within the category of "common knowledge" and are therefore proper subjects for judicial notice.

■ We must also reject plaintiff's further argument that the district court's determination that he occupied a policymaking position was erroneous even if the court properly took judicial notice of facts not alleged in the complaint. Although, as the Supreme Court noted in *Elrod*, "no clear line can be drawn between policymaking and nonpolicymaking positions, the nature of the responsibilities is critical" in resolving this issue. "An employee with responsibilities that are not well defined or are of a broad scope more likely functions in a policymaking position." 427 U.S. at 367–68, 96 S.Ct. at 2687. As deputy city attorney, plaintiff was given all the duties imposed by law on the city attorney,[5] including conducting all the law business of the city, drafting ordinances, and supervising assistant city attorneys.[6] Moreover, under the Milwaukee City Charter he was in line to succeed the Mayor of the City of Milwaukee if a vacancy occurred in that office. We agree with the district court that these facts clearly established that plaintiff's duties were of the "broad scope" which the *Elrod* Court equated with a policymaking function.

#### B.

Plaintiff's final argument is that, even if he was a policymaker, the state's subordinating interest was insufficient to justify the abridgment of his First Amendment rights. He contends that the purpose of the policymaker exception contained in *Elrod* and *Lewis* is to ensure that the policies of a new administration are not frustrated by holdover employees from the old administration who are likely to be members of a different political party with different po-

---

**5.** *See* note 4 *supra.*

**6.** *See* note 3 *supra.*

litical philosophies. He asserts that in this case, by contrast, there is neither any evidence that he and Brennan are members of different political parties nor reason to think that his action in running for Congress would impede Brennan's performance of his duties as city attorney.

Plaintiff's interpretation of the scope of the policymaker exception in *Elrod* is not without merit. The language of the opinion [7] indicates that the Court's primary concern was with preventing employees who are members of a defeated political party from undercutting the policies of a new administration representing a different political party and thereby frustrating the will of the electorate. And while the language of Mr. Justice (then Judge) Stevens in *Lewis* [8] creating an exception to the general rule that public employees may not be fired for political reasons is broader than the Supreme Court's language in *Elrod*, the plaintiffs in *Lewis* were all employees who had been dismissed from government jobs because they refused to profess allegiance to the Republican Party. Thus, neither *Elrod* nor *Lewis* squarely faced the question of whether the policymaker exception should be extended beyond the paradigm situation in which a dismissed employee would, by the nature of his political affiliation, retard the effectuation of a new administration's policies.

We therefore must determine as a matter of first impression whether the state's interest in permitting Brennan to fire plaintiff outweighs plaintiff's First Amendment rights. We conclude that it does.

The deputy city attorney of Milwaukee functions in a highly discretionary role. He cannot perform his job by the simple exercise of ministerial competence. Rather, many of the decisions that he makes will involve implementation of the policies of the city attorney's office as a whole. Some of these decisions will actually create policy.

The elected official responsible for setting the policy of the city attorney's office is the city attorney himself. One of the major problems that he confronts in his job is ensuring that his policies are carried out by his subordinates, and that any policy-creating decisions made by those subordinates conform with the broad objectives he chooses to pursue. This problem would become a nightmare for the city attorney unless he could demand the absolute loyalty of his policymaking deputy. If he lost confidence in his deputy, for whatever reason, his ability to perform his job would be severely hampered. Moreover, once an open rift developed between the city attorney and his deputy—even if the basis for the feud were unrelated to actual job performance—the city attorney's office could become a battleground in which little was accomplished, to the detriment of the citizens of Milwaukee. It is presumably for this reason that the Milwaukee City Charter and City Code permit the city attorney unfettered discretion to select his deputy and exclude the position of deputy city attorney from the civil service tenure which lesser attorneys in the city attorney's office receive.

 The important public interest in permitting the city attorney to effectively implement his policies justified Brennan's

---

**7.** The relevant portion of the Court's opinion stated:

A second interest advanced in support of patronage is the need for political loyalty of employees, not to the end that effectiveness and efficiency be insured, but to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate. The justification is not without force, but is nevertheless inadequate to validate patronage wholesale. Limiting patronage dismissals to policymaking positions is sufficient to achieve this governmental end. Nonpolicy-

making individuals usually have only limited responsibility and are therefore not in a position to thwart the goals of the in-party. 427 U.S. at 367, 96 S.Ct. at 2687.

**8.** The court in *Lewis* stated:

Plaintiffs properly do not challenge the public executive's right to use political philosophy or affiliation as one criterion in the selection of policy-making officials. Moreover, considerations of personal loyalty, or other factors besides determination of policy, may justify the employment of political associates in certain positions. 473 F.2d at 574.

action in firing plaintiff. Brennan obviously regarded plaintiff's refusal to drop his candidacy as an expression of disloyalty. Whether Brennan made a wise decision is beside the point, for it is not our function to judge the wisdom of the actions taken by municipal officials. Brennan had the power under state law and the City Code to dismiss his deputy for reasons of personal loyalty, and we hold that under the circumstances of this case his right to exercise that power was sufficiently important to override the First Amendment rights of plaintiff.[9]

We agree with the district court that in deciding this case we need not reach the question of whether under the First Amendment Brennan could have fired plaintiff for reasons of racial, sexual, or religious bias.

The judgment of the district court is affirmed.

---

**9.** Since Brennan is not liable under the facts alleged, it follows that the mere allegations of conspiracy between defendants Reuss and Brennan are insufficient to establish the liability of Reuss under color of state law for purposes of 42 U.S.C. §§ 1983 and 1985. *Hansen v. Ahlgrimm*, 520 F.2d 768 (7th Cir. 1975).