Michael **VINCENT**, Plaintiff,

v.

John **MAERAS**, Defendant.

No. A–Civ–78–5010.

United States District Court, S. D. Illinois, S. D.

March 9, 1978.

Jack A. Strellis, Belleville, Ill., for plaintiff.

Donald L. Smith, Asst. State's Atty., Edwardsville, Ill., for defendant.

J. WALDO ACKERMAN, District Judge.

Before me is plaintiff's petition for a preliminary injunction and defendant's motion to dismiss. After hearing oral argument and the evidence presented by both sides, and considering memorandums of law by the parties, I have reached the following conclusions.

## FACTS

For purposes of the present motions there does not appear to be a significant dispute as to the facts. Plaintiff is a communication technician in the Madison County Sheriff's Department. In that position the plaintiff was not entitled to any contractual or statutory rights of employment and he could be terminated at will by the Sheriff. In November of 1977, plaintiff met with the defendant, who is the present Sheriff of Madison County, and declared his intention of seeking the Democratic nomination for Sheriff in the upcoming primary election. The substance of the conversation is not clearly established but plaintiff interpreted it as an assurance that no repercussions would evolve from his candidacy. It was brought out that there was no mention of a leave of absence requirement at that meeting and plaintiff testified that if he had known of the policy he could not have afforded to take the leave and therefore would not have filed his name as a candidate.

On November 18, 1977, the plaintiff announced through the media that he was a candidate for the Democratic nomination for Sheriff. On December 12 he filed a nominating petition with the County Clerk. The last formal day to withdraw was December 24, 1977. On January 3, 1978, the plaintiff informed defendant by letter that he must request a leave of absence from his employment during his candidacy. The explanation was that since the Merit Rules required Deputy Sheriffs to take a leave during their candidacy, that policy should be applied to all employees in the Sheriff's Department, even those like plaintiff not under the Merit Rules. The reason for the policy was to "preserve the integrity of the Sheriff's Department and remain fair to all employees."

Plaintiff refused to request the leave of absence, although a Deputy Sheriff also seeking the Sheriff's Office did take a leave. On January 3, 1978, the plaintiff was informed by letter that his employment was terminated.

## ISSUE

The issue is whether the Sheriff's decision to require this non-merit employee under these circumstances to take a leave of absence when seeking public office is an impermissible infringement of the employee's constitutional rights?

## ANALYSIS

The instant case is different factually from any discovered in the reporters. In my opinion the proper analysis is to (1) determine the nature of the constitutional right allegedly infringed and the extent of

infringement; (2) determine whether the right is one deemed fundamental so as to require the state to show a compelling rather than merely a legitimate, state interest to override it; and (3) determine whether the State's interest is sufficient to justify the extent of constitutional infringement present.

## I. NATURE AND EXTENT OF CONSTITUTIONAL INFRINGEMENT

Plaintiff alleges that he has been punished for exercising his First Amendment rights to freedom of expression and political association. Plaintiff has continued to seek the office of Sheriff and his First Amendment rights have not apparently been diminished. At the point when the plaintiff was demanded to take a leave of absence he evidently decided that the request was unreasonable and unconstitutional. Rather than comply with the order at that time, cease political · activity, and seek judicial review of its constitutionality, the plaintiff refused. In continuing to fully exercise his First Amendment rights, which led to his termination for failure to obey a direct order of the Sheriff, plaintiff is relying on this Court to find that the Sheriff's order was constitutionally impermissible, and punished him for exercise of his rights.

Furthermore, plaintiff alleges that his due process and equal protection rights were violated because he had no notice of any rule, regulation, or policy which proscribed his political activity or required him to take a leave of absence.

It was stipulated that plaintiff is a non-policymaking employee under the test set forth in *Elrod v. Burns,* 427 U.S. 347, 367–68, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). *Elrod* held that patronage dismissal[1] of non-policy making personnel constitutes a penalization for belief and association which is constitutionally prohibited. There are no facts before me which bring the instant case into the realm of patronage dismissal.

A case more clearly relevant is *Newcomb v. Brennan,* 558 F.2d 825 (7th Cir. 1977). Newcomb was a deputy city attorney in Milwaukee who was fired by the city attorney when he refused to withdraw from seeking candidacy for the United States Congress. Because Newcomb was a policy-maker the Court of Appeals affirmed the District Court's dismissal of the lawsuit on the basis that the State's interest outweighed Newcomb's individual rights. The Court found, however, that it would have had to dismiss without reaching that ground if plaintiff's First Amendment claim was solely based upon a right to seek office. Newcomb said that seeking office, per se, has never been recognized as so fundamental as to revoke a rigorous standard of review and restrictions on candidates have been upheld, citing *Buckley v. Valeo,* 424 U.S. 1, 34–59, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); and *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). In *Newcomb,* the Court found that it was not dealing with a facially neutral program regulating elections, but rather punishment by the city attorney for his disapproval of plaintiff's candidacy. Such State action regulating content of individual expression was found to have been repeatedly struck down. Thus, the *Newcomb* Court found: "plaintiff's interest in running for Congress and thereby expressing his political views without interference from state officials who wished to discourage the expression of those views lies at the core of the values by the First Amendment." *Newcomb* at 829.

Plaintiff has also alleged that he is advancing the political ideas of a certain group of voters and *Newcomb* indicates that this may bring his action under the protection accorded freedom of association. *Newcomb* at 828.

■ Based on the foregoing, I find that plaintiff has alleged violations of certain cognizable First Amendment rights. The violation is that exercising of the rights led

---

1. Discharge solely because they did not support and were not members of a certain political party and had failed to obtain the sponsorship of one of its leaders.

to imposition of a restriction, leave of absence on unpaid status. Furthermore, failure to comply with the restriction led to plaintiff's dismissal.

## II. WHAT STANDARD OF REVIEW IS APPLICABLE, COMPELLING STATE INTEREST OR MERELY A LEGITIMATE STATE INTEREST?

█ Finding that there are restrictions of plaintiff's First Amendment rights does not end the inquiry. First Amendment protections are not absolute and restrictions are permitted for appropriate reasons. However, political belief and association constitute the core of the activities protected by the First Amendment. *Elrod v. Burns,* 427 U.S. 347, 356, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Significant impairment, either direct or indirect, of First Amendment rights must survive exacting scrutiny, and the mere showing of a legitimate state interest is insufficient to justify the infringement. *Elrod* at 359, 96 S.Ct. 2673 and cases cited therein.

The compelling state interest, or strict scrutiny, test was set forth as follows: "it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights. *Elrod* at 363, 96 S.Ct. at 2685.

## III. IS THE STATE's INTEREST SUFFICIENT TO JUSTIFY THE EXTENT OF CONSTITUTIONAL IMPAIRMENT PRESENT?

█ The testimony of the defendant Sheriff reveals his thinking behind his actions in terminating plaintiff. The Sheriff relied on a Merit Commission Rule [2] which prohibited merit system employees from engaging in any political activity. While acknowledging that the rule was somewhat overbroad [3], and did not specifically apply to the plaintiff's position, the Sheriff testified that a well known tradition existed in the Department that all employees request and receive a leave of absence [4] without pay during the period they are actively seeking office. No particularly compelling reasons were articulated for applying such a restriction on non-policymaking employees such as plaintiff. Rather the application was a decision to extend an otherwise inapplicable rule on the basis of treating all employees equally. While equal treatment of all departmental employees is a noble aim, equality in and of itself is not a sufficient state interest to infringe upon an individual's constitutional rights.

█ There is no doubt that political activities may be restrained by legislation where it serves in a necessary manner to foster and protect efficient and effective government. *See, CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1949); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), and Annotation, Validity of Statutes Restricting Political Activity of Governmental Officers and Employees, 28 A.L.R.3d 717. The courts have appeared to be most ready to accept restrictions on political activity of governmental employees in their engagement in politics as candidates, particularly

**2.** 15. Officers of the department shall restrict their political activity to voting. Officers shall not solicit, directly or indirectly on any pretext to any person, committee, or association, for political purposes. Officers are not allowed to act as precinct captains, precinct lieutenants, workers, helpers or hold office in a political party. Officers are not allowed to work for or donate their services, whether compensated or not, to any political candidate or party. Officers shall not use the influence of their position for political reasons. However, any officer shall be allowed to serve out any term for which he has previously been elected.

Nothing contained herein shall be deemed to interfere with the right of any person to vote for any candidate and upon any issue as his reason and conscience may dictate.

**3.** On advise of counsel, the Sheriff has given the rule a narrow interpretation. In fact, the Sheriff had allowed members of the Department to run in non-partisan elections without taking a leave of absence.

**4.** Merit Rules, Article VII, A. Leaves of Absence.

where as here one runs for his superior's office. 28 A.L.R.3d at 721.

The plaintiff contends that no case exists which upholds a restriction such as the one in this case which arises from an order or policy of an executive absent legislative enactment. Defendant points out that there was no statute, rule or regulation in *Newcomb* and the termination was upheld. However, *Newcomb* is distinguishable because it extended the *Elrod* approval of the constitutionality of firing a policymaking employee for political reasons, even where candidacy and other First Amendment rights were involved. There, as here, the superior had virtually unfettered discretion in firing a subordinate. In the instant case the plaintiff is a non-policymaking employee and could not be dismissed for political reasons alone. Thus additional state interest must be shown to justify the abridgement of plaintiff's First Amendment rights.

A further objection to defendant's action is that even if his policy is constitutionally permissible, it violates due process of law to apply it to plaintiff who did not have any notice that the political restrictions applied to him until a time after he was unable to legally withdraw from the campaign.

## PRELIMINARY INJUNCTION

■ The present petition is for preliminary injunctive relief. Four elements are considered in determining whether to grant such relief: (1) lack of an adequate remedy at law; (2) irreparable harm; (3) comparison of relative hardships; and (4) prospect of irreparable harm. *Banks v. Trainor,* 525 F.2d 837 (7th Cir. 1975).

In the Seventh Circuit opinion in *Burns v. Elrod,* 509 F.2d 1133 at 1136 (7th Cir. 1975), the Court held:

> The district court's order, by holding that the loss of employment does not constitute sufficient irreparable harm and that the plaintiffs have an adequate remedy at law, suggests that a preliminary injunction would never be appropriate in this type of case. We must reject this conclusion, for clearly more is involved than a simple loss of employment. What

lies at the heart of these cases is the constitutional right of governmental employees to associate freely with political groups of their choice without official reprisal for such affiliation. . . . Inasmuch as this case involves First Amendment rights of association which must be carefully guarded against infringement by public office holders, we judge that injunctive relief is clearly appropriate in these cases.

■ Since here, as in *Elrod,* the First Amendment rights are involved, and plaintiff has made a sufficient showing of probability of success on the merits, preliminary relief should be granted. This does not, of course, absolutely guarantee plaintiff's eventual success on the merits.

The following orders shall issue:

(1) the plaintiff's motion for preliminary injunction is allowed and plaintiff shall be reinstated pending the resolution of this lawsuit; (2) the motion by defendant to dismiss is denied.

A pretrial conference will be held on Monday, March 27, 1978, at 1:15 p. m., at Alton, Illinois, to determine the future course of these proceedings.