**William D. BAVOSO, Plaintiff,**

v.

**Fred R. HARDING, Jr., Patricia K. Weed, Walter B. Markovits, Pauline Schultz and William J. Hockenberry, Defendants.**

**No. 80 Civ. 3442 (RWS).**

United States District Court, S. D. New York.

Nov. 21, 1980.

Cohen, Bavoso, Weinstein & Fox, Port Jervis, N. Y., for plaintiff by Mark D. Fox, Port Jervis, N. Y., of counsel.

Knopf & Tamsen, Newburgh, N. Y., for defendants by James P. Tamsen, Newburgh, N. Y., of counsel.

## OPINION

SWEET, District Judge.

By this motion, William Bavoso seeks a preliminary injunction against the defendants, five Republican members of the Common Council of the City of Port Jervis, New York, restraining them from "terminating or attempting to terminate, alter, change, usurp or in any way affect Plaintiff's current employment status as Corporation Counsel of the City of Port Jervis." Because Bavoso has failed to meet the standard of this Circuit for preliminary injunctive relief, the motion is denied. The facts are as follows.

The City Charter of the City of Port Jervis establishes the procedure whereby the Corporation Counsel is appointed, his term of office, and his powers and duties. It provides, in Section C2–4(A), that the Corporation Counsel "shall be nominated by the Mayor and appointed by the Common Council, five (5) votes being necessary for an appointment . . . ." In Section C2–4(B), it sets a term of one year, "subject to removal for cause by the Common Council," for the Corporation Counsel. Finally, in Section C3–8, it sets forth the Counsel's powers and duties, as follows:

The Corporation Counsel shall be the legal advisor of the Mayor, Common Council and all other city officers, boards and agencies. It shall be the duty of the Corporation Counsel to prosecute all civil actions and proceedings by, and to defend all civil actions and proceedings against said city and every board, agency or officer thereof and to discharge all other legal services as the Mayor or Common Council may direct. It shall also be the duty of the Corporation Counsel to prosecute all cases of violations of local laws and ordinances before the City Court or other appropriate court. The Corporation Counsel shall prosecute or defend all matters as directed by state law. No action or proceeding shall be commenced by the Corporation Counsel unless directed by the Common Council.

Bavoso was first appointed as Corporation Counsel of Port Jervis on January 23, 1978, after nomination by Port Jervis Mayor E. Arthur Gray. He was reappointed on January 22, 1979. On both occasions, his appointment was unanimously approved by the members of the Common Council then serving, among whom were, on the first occasion, defendants Fred R. Harding, Jr. and Walter B. Markovits, and, on the second occasion, those two defendants and a third, Patricia K. Weed. At the time of these appointments, there was a Democratic majority on the Common Council. The plaintiff is a Democrat.

In the November, 1979 election, Republicans gained control of the Council; with the coming of the new year in 1980, the five defendants, who make up the new Republican majority, assumed office.

On January 28, 1980, Mayor Gray once again nominated Bavoso for the position of Corporation Counsel. This time, his appointment was defeated, with all five defendants voting against him. Since then, Mayor Gray has nominated Bavoso every thirty days. Each time, Bavoso's appointment has been defeated by the same five Council members, the defendants herein. After those defeats, Mayor Gray has himself appointed Bavoso to act as Corporation Counsel, claiming executive authority to do so. However, the Common Council has not recognized Bavoso's appointment, and has withheld payment on vouchers submitted by him. Nonetheless, the Council did adopt a resolution on the 14th of July, 1980, allo-

cating a flat fee of $5,000 for Bavoso "for services rendered during the period February 1, 1980 to June 30, 1980 plus an additional sum of $1250 for expenses incurred during said period." Bavoso declined to accept that fee because of the Council's failure to recognize him as Corporation Counsel. There is no dispute that Bavoso has continued to perform legal work for the City; the dispute revolves around his authority for doing so, and, most importantly, his alleged entitlement to reappointment to the position of Corporation Counsel.

Bavoso contends that the Council's failure to reappoint him resulted from partisan political considerations only, that his membership in the Democratic Party was the sole reason for his rejection by the Republican majority. He argues that the Council's action, because based on partisan politics, violated his rights under the First Amendment.

The defendants assert that Bavoso was incompetent, and that that incompetence caused them to reject his nomination. They point to a number of instances that, they say, illustrate Bavoso's poor performance in office and justify their refusal to confirm him for a third term.

The standard for the granting of a preliminary injunction in the Second Circuit was articulated in *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) as follows:

> The standard in the Second Circuit for injunctive relief clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. [Footnote omitted.]

Bavoso has shown neither possible component of the second element on this equation.

To begin with, Bavoso has failed to establish that he is likely to succeed on the merits. For his legal argument, Bavoso stands on *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). But *Branti* does not provide the support he seeks.

In *Branti*, the Supreme Court found unconstitutional the action of a newly elected Public Defender in firing assistants who were members of the opposition political party because of their party affiliation. The Court re-examined and seemingly abandoned the test set forth in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), for determining the permissibility of consideration of party affiliation in dismissals from positions of public employment. That test allowed such consideration for policy-making and confidential positions, and disallowed it for non-policy-making, non-confidential employees. In *Branti*, the Supreme Court recognized that certain policy-making positions require no partisan political allegiance, whereas certain non-policy jobs may legitimately be tied to party affiliation. The *Branti* Court set forth a new test:

> In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved.

*Id.* 445 U.S. at 584, 100 S.Ct. at 1295, 63 L.Ed.2d at 584.

Applying this new test to the case before it, the Court found that party affiliation was not a legitimate factor to be considered in making determinations about the continued employment of assistant public defenders. At the same time, however, and of particular importance here, it specifically left open the question of the legitimacy of taking party affiliation into account in selecting and dismissing prosecutors, *id.* n.13, citing *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir.), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977), a case upholding a dismissal, on partisan political grounds, of an assistant city attorney. *Newcomb* involved a public employee with duties and responsibilities much like those established by the Charter of the City of Port Jervis for

its Corporation Counsel. Thus, after *Branti*, the legality of the Common Council's action is, technically, an open question.

Turning to the merits of that question, it is, in my judgment, unlikely that Bavoso could succeed on his claim because of the structure of the appointment mechanism established by the City Charter of Port Jervis. That structure contemplates an essentially political process in which Council and Mayor check and balance one another. During periods in which both branches are controlled by members of the same political party, that process could be expected to work harmoniously. During periods such as the present, however, in which opposing parties dominate the two branches, discord is foreseeable, if not indeed likely. The Charter provides no means of dispute resolution, leading me to conclude that the appropriate method of settlement is through the give and take of the two branches involved and affected, whose participation in the appointment process the Charter explicitly calls for. *Cf. Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962) (a question presented to Article III court is properly deemed political and therefore inappropriate for judicial decision when its resolution is committed by the Constitution to a branch of the federal government other than the courts.)

■ Evaluating this process of give and take in light of *Branti*, and thus considering the issue *Branti* failed to decide, the court must determine whether "party affiliation is an appropriate requirement for the effective performance of the . . . office [of Corporation Counsel]", and therefore a permissible factor in the considerations of Common Council members called upon to ratify or reject the Mayor's selection. In view of the duties of the Port Jervis Corporation Counsel, the answer to that question is yes. *See Newcomb v. Brennan, supra.* Political party bonds often signify common goals and strategy, and such commonality is an appropriate factor in decision-making for positions such as this. Of course, this particular situation is complicated by the fact that the Corporation Counsel of Port Jervis serves as legal advisor to both the legislative and the executive branches, but that fact alone is not enough to justify judicial intervention in a process specifically assigned by the Charter of Port Jervis to that City's Mayor and Council.[1]

■ Even if disposition on the merits did not appear so likely to be adverse to Bavoso, however, and if his claim presented "sufficiently serious questions going to the merits to make them a fair ground for litigation," which I conclude it does not, Bavoso's claim for preliminary relief would nonetheless fail. For turning to the alternate route for satisfaction of the second element of the *Jackson Dairy* test, it cannot be said that there is present here "a balance of hardships tipping decidedly toward the party requesting the preliminary relief." To compel the Common Council of Port Jervis to accept as its legal advisor a man claimed by a majority of its members to be incompetent would be to impose no less significant hardship on it than to deny Bavoso the relief that he seeks imposes on him. Thus, under either aspect of the second element of the *Jackson Dairy* test, Bavoso's claim for preliminary injunctive relief is insupportable.

---

1. The factual questions raised by the defense contentions that Bavoso was incompetent and that he was not reappointed because of that incompetence also render Bavoso's claim weak. On the present state of this record, it is impossible to determine why Bavoso was rejected by the Council, whether that rejection was based on political affiliation or professional ineptitude. If the latter ground indeed existed, and would alone have prompted the action of the Council regardless of any political considerations, it is likely that the Council's refusal to approve Bavoso would be found to be constitutionally permissible. *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). However, there is no need to have a hearing to establish the true reason for the Council's action. The ultimate disposition of this motion would be the same, regardless of which side prevailed on its factual assertions. That is so because even if Bavoso's factual contentions were to be established, he would fail to show likelihood of success on the merits of his legal claim, for the reasons set forth in the body of this opinion.

Because of this disposition of the issues presented under the second element of the *Jackson Dairy* test, I need not address the issue of irreparable injury.

The motion is denied.

IT IS SO ORDERED.