**Robert L. O'CONNELL, Plaintiff,**

v.

**Dennis T. GORSKI, Individually and as Erie County Executive; Patrick H. NeMoyer, Individually and as Erie County Attorney and County of Erie, New York, Defendants.**

**CIV–88–473E.**

United States District Court,
W.D. New York.

March 14, 1989.

David Gerald Jay, Buffalo, N.Y., for plaintiff.

Kenneth A. Schoetz, Buffalo, N.Y., for defendants.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

The plaintiff, an Assistant County Attorney for the County of Erie from the time of his appointment February 23, 1968 through the time of his dismissal April 8, 1988, has complained pursuant to 42 U.S.C. § 1983 against the defendants, alleging that his dismissal from his position as an Assistant County Attorney was politically motivated in violation of his rights under the First and Fourteenth Amendments to freedom of association. The defendants have moved pursuant to Fed.R.Civ.P. rule 56 for summary judgment dismissing the Complaint.

On January 1, 1988 defendant Gorski took office as the County Executive of the County of Erie, succeeding a Republican

regime, and thereafter appointed defendant NeMoyer to the position of County Attorney. The plaintiff alleges that in early January 1988 NeMoyer conferred with him as to his plans for continuing in his position as an Assistant County Attorney assigned to Family Court and that NeMoyer had stated that he hoped the plaintiff would stay on despite the change to an administration controlled by the Democrat Party. In February of that year the plaintiff was informed by NeMoyer that Gorski had directed NeMoyer to advise him that his services were no longer required and that the reason for such was that Gorski needed to open up positions to be filled with his supporters. Allegedly NeMoyer indicated that the decision to ask for the plaintiff's resignation was no reflection upon his ability and prior record but that it was solely the result of political realities brought about by the change in administrations. After refusing to resign the plaintiff was officially dismissed from his position. He alleges in support of his claim that he was an active Republican who had supported Republican nominees for office in the past and that his position as an Assistant County Attorney assigned to Family Court was a non-policy one in which "political activity" and "political faith" were not qualifications.

The defendants offer a number of grounds in support of their motion for summary judgment including *inter alia* that the plaintiff has failed to make out a *prima facie* showing of political motivation for his dismissal, that there were a number of apolitical reasons for the dismissal, that the plaintiff's position as an Assistant County Attorney brought him within the "policymaking" exemptions enunciated in *Branti v. Finkel* ("*Branti*"), 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Elrod v. Burns* ("*Elrod*"), 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and that both Gorski and NeMoyer are entitled to qualified immunity from civil damages. The plaintiff contends, however, that there are a number of genuine issues of material fact as to the reasons and purported justifications for his dismissal and that, pursuant to Fed.R.Civ.P. rule 56(f), he should be entitled to conduct pre-trial discovery be-fore a decision is rendered on the defendants' motion.

■ In the context of political patronage firings the United States Supreme Court has held that there are in fact limits to an administration's use of such practices. *See Elrod* and *Branti.* Dismissals based strictly on a public employee's political affiliation can not withstand constitutional scrutiny under the First Amendment unless the firing authority can demonstrate that the position in question involves some type of "policymaking" responsibility. In *Elrod,* at 373, 96 S.Ct. at 2689, it was held that only persons serving in policymaking positions could be dismissed based solely on their political affiliations. The *Branti* Court reaffirmed the Court's disapproval of purely patronage dismissals and refined the *Elrod* exception for policymaking employees, stating that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294. The United States Court of Appeals for the Second Circuit, in a case similar to the instant one and emanating from this Court, has reinterpreted the *Branti* formulation to read "that political affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance * * *." *Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988). This reinterpretation and "broadening" of the *Elrod* and *Branti* exception, severely limits the number of public positions protected from patronage firings and exempts from First Amendment protection most policymaking and confidential public employees. *See ibid.*

In order for the plaintiff to succeed on his claim he must first prove that his Republican affiliation was a substantial or motivating factor behind the defendants' decision to fire him. *See Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Once the plaintiff meets this initial burden, the de-

fendants must then show that they had a legitimate reason, apart from the plaintiff's protected conduct, for such decision. *Ibid.* Therefore, the defendants' right *vel non* to dismiss the plaintiff turns upon their motivations underlying the termination and the exact nature of the position held by the plaintiff. *See Branti.*

The plaintiff's initial burden is not insignificant and he can not rely solely on the fact that he was affiliated as a Republican fired by an incoming Democrat administration. *Nekolny v. Painter,* 653 F.2d 1164, 1168 (7th Cir.1981). Furthermore, it is imperative to show that the defendants knew of the plaintiff's political affiliation. *See Savage v. Gorski, supra,* at 68; *Laskaris v. Thornburgh,* 733 F.2d 260, 265 (3rd Cir.), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984).

The defendants' motivation for the dismissal and knowledge *vel non* of the plaintiff's political affiliation are undoubtedly genuine issues of material fact which can not be resolved on this motion. *See Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Sterling Nat. B. & T. Co. of N.Y. v. Fidelity Mfg. Invest.,* 510 F.2d 870, 875 (2d Cir. 1975). The plaintiff avers that, when NeMoyer informed him in February 1988 that his services were no longer needed, NeMoyer stated that Gorski had advised him to dismiss the plaintiff because he needed to open more slots to fill with his own political supporters. Affidavit Robert L. O'Connell, Esq. (sworn to June 22, 1988), ¶ 22. NeMoyer denies that he ever made such a statement and avers that at no time did he ever indicate to the plaintiff that his dismissal was based on the political ramifications brought about by the change in administrations. Affidavit of Patrick H. NeMoyer, Esq. (sworn to June 1, 1988), ¶¶ 21–24. Clearly, this is a credibility determination and an issue of fact that is crucial to the plaintiff's claim. Moreover, the claimed legitimate apolitical reasons offered by the defendants for the dismissal are also issues of fact that can not now be determined.

This, however, does not end this Court's present inquiry inasmuch as, even if genuine issues of material fact do exist with respect to the defendants' motivations and/or justifications, this Court can still grant summary judgment for the defendants on the question whether the plaintiff held a policymaking and/or confidential position. *See Branti; Ecker v. Cohalan,* 542 F.Supp. 896, 910 (E.D.N.Y.1982).

■ The plaintiff contends that his work as an Assistant County Attorney, except for a six-month period in 1987 when he was the First Assistant County Attorney, can not be considered confidential. His actual duties consisted of handling litigation for the County in Family Court. O'Connell Affidavit, ¶¶ 3–4. The determinative inquiry, however, is not what functions the public employee actually performed but rather what duties he was actually empowered to perform and which ones were inherent in the public office he held. *E.g., DeAbadia v. Izquierdo Mora,* 792 F.2d 1187, 1192 (1st Cir.1986); *Ness v. Marshall,* 660 F.2d 517, 522 (3rd Cir.1981). Clearly the office of Assistant County Attorney is inherently confidential and the fact that for much of the plaintiff's tenure he was assigned to handling litigation in Family Court does not change the confidential nature of that position.

The Erie County Charter, Article VI, Section 602 provides:

"Powers and duties. The county attorney shall be the legal advisor for the county and, on its behalf in county matters, of its officers and administrative units. He shall, in all county legal matters of a civil nature, advise all county officers and employees and, where in the interest of the county, prepare all necessary papers and written instruments in connection therewith; prosecute or defend all actions or proceedings of a civil nature brought by or against the county; prepare resolutions, ordinances, legalizing acts and local laws to be presented for action by the county legislature, together with notices and other items in connection therewith; and perform such additional and related duties as may be

prescribed by law, by the county executive or by resolution of the county legislature; * * * "

Section 6.03 of the Erie County Administrative Code provides that:

"The county attorney shall * * * have the power to appoint assistant county attorneys who shall perform such duties pertaining to the office as may be directed by the county attorney. * * * "

As can be seen, the County Attorney and the Department of Law are the legal advisors for the County, its officers and its administrative units. The County Attorney and his Assistants are to advise all county officers and employees and to prosecute and defend all civil actions brought by or against the County. In reality many legal decisions made by a governmental entity encompass ideological and political concerns and, as such, the chief executive of such an entity and his chief legal advisor need to appoint people who are loyal to and share the same or similar political ideology. *See Ness v. Marshall, supra.* "[Most] government attorneys are in positions of government policymaking and hold confidences of government leaders through attorney/client relationships." *Finkelstein v. Barthelemy,* 678 F.Supp. 1255 (E.D.La. 1988). The sanctity of the confidential attorney/client relationship should no more readily be impaired than any other such well-recognized privileged relationship and, as such, the defendants here can properly demand that persons who hold the position of a Assistant County Attorney share the same or similar political ideology. As noted above, the interpretation of *Branti* by the United States Court of Appeals for the Second Circuit exempts most policymaking and/or confidential employees from First Amendment protection, except maybe the football coach of a state university, as noted in *Branti. Savage v. Gorski, supra,* at 68.

■ The plaintiff, although spending much of his tenure with the County in Family Court, is no different than the other governmental attorneys who have been previously found by most courts to be policymaking and/or confidential employees. *See Finkelstein v. Barthelemy, supra,* at 1260 fn. 37 (noting a number of cases where Courts have upheld the political firings of government attorneys); *but see Tavano v. County of Niagara, New York,* 621 F.Supp. 345 (W.D.N.Y.1985), *aff'd* 800 F.2d 1128 (2d Cir.1986) (unpublished opinion) (finding that an Assistant County Attorney, whose sole duties were assisting persons in Family Court, was not a policymaker, but nonetheless upholding the dismissal for legitimate apolitical reasons). Inasmuch as the plaintiff herein had worked in other areas within the Department of Law other than in Family Court during his tenure with the County [1] and as an Assistant County Attorney for the County of Erie was to perform whatever duties pertaining to the office of the County Attorney as were assigned to him—Erie County Administrative Code § 6.03—, he stood in a different position than did the plaintiff in *Tavano v. County of Niagara, New York, supra,* and was without question a confidential employee.[2]

Moreover, inasmuch as New York's Civil Service Commission has defined the plain-

---

1. As already noted, at one time during his tenure the instant plaintiff was appointed to the position of First Assistant County Attorney and at the beginning of Gorski's administration, was working in an area within the Department of Law outside of Family Court. The plaintiff in *Tavano v. County of Niagara, New York, supra,* from the time of his appointment as an Assistant County Attorney through his dismissal handled matters solely in Family Court.

2. In order to hold the County liable in this section 1983 action the plaintiff must allege and ultimately show that Gorski and NeMoyer were acting pursuant to an unconstitutional policy or custom formulated by the County when they fired the plaintiff from the County's employ. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed. 2d 611 (1978). A municipality can not be sued under section 1983 merely for an injury inflicted by its employees or agents. *Ibid.* Obviously if Gorski, as County Executive, had formulated an unconstitutional policy of firing County employees merely on the basis of their political affiliation alone, then such might be said to be a policy or custom of the County. But inasmuch as this Court determines that neither Gorski's nor NeMoyer's action in firing the plaintiff was unconstitutional, the Complaint against the County cannot stand under section 1983.

tiff's position as non-competitive, this Court should give substantial deference to such classification and not become "embroiled in determining at each change of state or local administration which positions are appropriately within the political patronage system." *Savage v. Gorski, supra,* at 69.

Because this Court determines that there is no question but that the plaintiff's position as an Assistant County Attorney was of a policymaking and confidential nature and that there was a rational connection between shared ideology and job performance, the plaintiff's request for a continuance pursuant to Fed.R.Civ.P. rule 56(f) will be denied.[3]

Gorski and NeMoyer have alternatively moved for summary judgment on the grounds that they are entitled to qualified immunity from liability for civil damages inasmuch as their decision to dismiss the plaintiff did not violate any of his "clearly established" rights.[4] *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The crux of the qualified immunity defense is "objective legal reasonableness." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The issue, therefore, is whether in April 1988, the plaintiff had a clearly established constitutional or statutory right not to be terminated because of his political

affiliation. *See Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987). As the aforementioned and a fair reading of the established law demonstrate, the plaintiff had no such right. *See, e.g., Bauer v. Bosley,* 802 F.2d 1058 (8th Cir.1986), *cert. denied,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987); *Ness v. Marshall, supra; Newcomb v. Brennan,* 558 F.2d 825 (7th Cir.), *cert. denied,* 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed. 2d 455 (1977); *Bavoso v. Harding,* 507 F.Supp. 313 (S.D.N.Y.1980); *cf. Tavano v. County of Niagara, New York, supra; Layden v. Costello,* 517 F.Supp. 860 (N.D. N.Y.1981).

"While *Elrod* and *Branti* developed a useful framework for assessing the constitutionality of patronage dismissals, it cannot be said that these decisions 'clearly established' the law with respect to every governmental position." *Hawkins v. Steingut, supra,* at 320. As noted in *Finkelstein v. Barthelemy, supra,* at 1260, most of the decisions of lower courts that have dealt with the specific position involved here, have held that government attorneys are not protected from patronage dismissals. Therefore, it can not be held that federal law was clearly established in the plaintiff's favor. The decision in *Tavano v. County of Niagara, New York, supra,* does not change the above finding inasmuch as that case is to some degree factually distinguishable from the present one and cannot be solely relied upon by the plaintiff to establish that his right to be free from a patronage dismissal was clearly established. It merely supports the con-

---

3. The essence of a determination whether one, in a policymaking and/or confidential position, can be dismissed is the sharing *vel non* of ideology. *Savage v. Gorski, supra,* at 68. To leave the criterion thus baldly stated produces uncontrollable situations. It better is to be stated, as in *Branti* 445 U.S. at 518, 100 S.Ct. at 1294, as a sharing of political beliefs and the only, facially and simplistically speaking, yardstick and determinant of such sharing of ideology and of political beliefs is one's political affiliation. It is not unreasonable to conclude that one affiliates with that political party the sociological and other tenets of which most closely align themselves with one's own. Consequently, a Republican tenably can assume a divergence of his own political beliefs and ideology from those of

a Democrat, and vice versa. Political affiliation, therefore, is a handy and simple and probably reliable indication of one's political beliefs and ideology. Admittedly, this opinion runs afoul of the determination in *Savage v. Gorski* that Gorski's firing of Savage and others could not have been politically motivated because Gorski didn't even know the employees' political affiliations.

4. It is well established that the qualified immunity defense does not protect a municipality or other governing body but only protects individuals acting within the scope of their official duties. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

clusion that the law was in fact not clearly established at the time of his dismissal and that, therefore, Gorski and NeMoyer are entitled to qualified immunity from civil damages.

Accordingly it is hereby ORDERED that the plaintiff's request for a continuance pursuant to Federal Rules of Civil Procedure rule 56(f) is denied, that the defendants' motion for summary judgment is granted and that the Complaint is dismissed.