**Samuel L. TAVANO, Plaintiff,**

v.

**The COUNTY OF NIAGARA, NEW YORK, and Glenn S. Hackett, as County Attorney for the County of Niagara, Defendants.**

**No. CIV–83–650C.**

United States District Court,
W.D. New York.

Oct. 29, 1985.

---

Miles A. Lance, North Tonawanda, N.Y., for plaintiff.

Hurwitz & Fine (Theodore J. Burns, of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

Plaintiff was terminated from his position as Assistant County Attorney of Niagara County on February 18, 1983. Relying on *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), plaintiff brought this action against the County and the County Attorney seeking damages and reinstatement.

A non-jury trial was held on plaintiff's claim from December 4, 1984, until December 7, 1984. Post-trial briefs were then filed, and summations were heard. The court has carefully considered the evidence and the arguments of counsel and makes the following findings of fact and conclusions of law.

Before his termination, plaintiff Samuel Tavano had a long association with Niagara County as County Attorney and then as an Assistant County Attorney. He held that post at the time of his termination. Mr. Tavano, who is a Republican, was appointed County Attorney in 1966 when the legislature changed from Democratic to Republican control. At that time, *Branti* and *Elrod* were not the law, and when he took office, Mr. Tavano replaced the Democratic Assistant County Attorneys with Republicans. During the trial, Mr. Tavano testified that he wanted Assistants working for him whose abilities were known to him, who were loyal to him, and who would carry out his instructions and enjoy his confidence. Mr. Tavano continued to serve as County Attorney until 1976. At that time, the Democrats again became the majority party in the legislature, and they appointed John Simon, a Democrat, to replace Mr. Tavano.

On September 28, 1978, Mr. Tavano returned to County service when he was appointed by Mr. Simon as an Assistant County Attorney for Family Court duties only. From the time of his appointment in 1978 until his discharge, plaintiff's sole responsibility was as an attorney in the Family Court, handling some support cases, juvenile cases, persons in need of supervision, and paternity proceedings. The disposition of the cases assigned to him in Family Court were, for the most part, left to his discretion. It was up to him to determine whether pleas should be taken or whether cases assigned to him should be tried. There were no oral or written guidelines given to him by the County Attorney. He worked in court two days a week. On the remaining days, he was free to conduct his practice. His status remained the same when Mr. Hackett, a Democrat and defend-

ant in this case, became John Simon's successor in office, in January of 1982. Neither County Attorney designated him pursuant to section 502, subdivision 5, of the County Law to take over any of the duties of the County Attorney in the event of his sickness or other disability.

Mr. Tavano was not called upon to advise anyone in the County legislature or any department heads on matters of governmental policy. He did not oversee any other employees. Nor was he closely supervised in his duties by either John Simon or his successor, Glenn Hackett.

Mr. Hackett testified that he retained Mr. Tavano, although he did so with reservations. He knew Tavano had been a County employee for some time and had much experience, but he described him as "somewhat laid back ... probably didn't push things to the ultimate in handling matters...." (Item 29, Vol. IV, p. 39.) Mr. Tavano was not dismissed until February of 1983, 13 months after Mr. Hackett became the County Attorney.

As of January 1, 1982, Mr. Tavano and other Assistant County Attorneys were put on the payroll of the Social Services Department. This was done to obtain reimbursement from the State of New York for their work in Family Court. This was not available from the State unless this bookkeeping transfer was made. Although Mr. Tavano was paid through the Social Services Department, he remained an Assistant County Attorney until his termination (Exh. 9).

Several months after Mr. Tavano left his position, there was a major reorganization. In August and September of 1983, new positions were created in the Department of Social Services for Assistant Social Services attorneys who were Civil Service employees appointed directly by the Commissioner of Social Services, not the County Attorney. Several Assistant County Attorneys were transferred to the Department of Social Services (Item 29, Vol. IV, p. 113). James Rodgers, who was Mr. Tavano's replacement, eventually served in the Department of the Social Services.

On September 1, 1982, Louis Scozzafava, a Democrat, was appointed the Commissioner of Social Services. In reviewing his department's procedures, he became aware of criticism by several of his caseworkers concerning a lack of cooperation by all of the Assistant County Attorneys handling their cases in Family Court, including Mr. Tavano. Scozzafava testified that he came to the conclusion that there had been lack of preparation by Assistant County Attorneys, perhaps improper handling of some cases, and lack of cooperation and communication between caseworkers and the attorneys (Item 29, Vol. IV, pp. 100–01, 136–38). He informed Mr. Hackett of these concerns. As Hackett understood Scozzafava, the goal was to create a more "business-like atmosphere." The Social Services Department was to be realigned, legal representation was to be improved, and the attorneys were to spend more time reviewing files with caseworkers (Item 29, Vol. IV, pp. 28–29).

A series of meetings was then scheduled between the caseworkers, Mr. Scozzafava, County Attorneys, and, on a few occasions, Family Court judges. These meetings were to seek solutions to the problems raised by Mr. Scozzafava. There is some dispute in the record as to whether Mr. Tavano was invited to all the meetings. Mr. Tavano claims he was not. However, Mr. Hackett's secretary testified that, as part of her duties, she notified plaintiff and the others to attend staff meetings (Item 29, Vol. III, p. 21). Mr. Hackett told his secretaries to notify all Assistant County Attorneys from Family Court of these meetings (Vol. III, p. 30). Mr. Tavano attended only one meeting.

Mr. Hackett testified that Scozzafava complained to him repeatedly about Tavano's performance. "No specific complaints about his in court procedures, but basically complaints about his failure to kind of adapt to the new policy that Mr. Scozzafava was attempting to institute with regard to communication between his caseworkers and the Assistant County Attorneys." (Vol. IV, p. 34.) Hackett said Scozzafava

also had complaints about some of the other attorneys, specifically Democrats Scirto and Heim (Vol. IV, p. 95).

Hackett testified that he began to think of terminating Tavano in the fall of 1982 after hearing of the criticism by Mr. Scozzafava (Item 29, Vol. IV, pp. 40–41). At that time, he had not discussed the possible termination with anyone else. He decided to terminate plaintiff in December of 1982 and informed Scozzafava of his decision at that time (Vol. IV, p. 134). Once he had made the decision, Mr. Hackett said he discussed the problem with Anthony Quaranto, a Democrat who was then Chairman of the Niagara County legislature, and another Democratic legislator, possibly James Sacco. Hackett advised the legislators about Scozzafava's complaints and told them he intended to fire plaintiff as of the first of the year (Vol. IV, pp. 42–43). Hackett asked Quaranto to take his decision to terminate Tavano before the Democratic Caucus in the County legislature.

Mr. Quaranto took the matter before the caucus and notified Hackett that the caucus approved. Hackett believed that Quaranto had personal objections to firing plaintiff (Vol. IV, pp. 42 and 58). Mr. Hackett testified that he would not have terminated Tavano if the legislators had been opposed. Once Hackett had secured their approval for firing Tavano, he sought clearance from the caucus to hire James Rodgers, former Democratic Chairman and plaintiff's eventual replacement (Vol. IV, p. 59).

At trial, there were other reasons which Hackett gave for terminating Tavano. He had urged all of his attorneys to develop a program to clean up the case backlog in Family Court. He said Tavano, whom he told to look into the problem, never made any suggestions (Item 29, Vol. IV, p. 38). Family Court Judge John Halpin testified that, due to the amount of cases and the lack of judicial time to attend to the problem, it was his opinion that it was almost impossible to get caught up on the backlog. Nevertheless, it was the impression of Scozzafava and Hackett that Tavano,

among others, simply did not attempt to deal with the backlog.

Hackett was also dissatisfied with the way in which Tavano handled a case contrary to Hackett's instructions. Mr. Hackett learned from Richard Doherty, attorney for the Niagara Falls Board of Education, that a case was pending in Family Court against a student charged with assaulting a teacher. Because of the circumstances, Doherty urged that the student defendant not be permitted to plea bargain. Hackett told Tavano not to permit a plea bargain (Item 29, Vol. IV, p. 36). Although Mr. Tavano did not recall receiving this instruction, I find Mr. Hackett's version credible. In Tavano's absence, another Assistant County Attorney allowed the student to plead to a lesser offense.

In Mr. Hackett's view, it was Mr. Tavano's responsibility to make sure that his instruction was communicated to the other Assistants. His failure to do so lent support to Hackett's position that Tavano's handling of his job was too relaxed.

During the trial, there was testimony from former County Attorney John Simon, who had found plaintiff's work to be quite satisfactory. Also, the two Niagara County Family Court judges testified that Mr. Tavano performed well in court.

Plaintiff contends that he was terminated because of the urging of James Rodgers, who had been a Chairman of the Democratic Party and was, in the summer and fall of 1982, seeking a job either with the County Attorney's Office or with the Niagara Frontier Transportation Authority. Mr. Hackett testified that Rodgers called him twice about such a position and that a Democratic legislator from North Tonawanda had also asked him to find a spot for Rodgers on his staff (Item 29, Vol. IV, pp. 60–61). At some point in the fall of 1982, Richard Shanley, then a Democratic legislator, and now Chairman of the County legislature, warned plaintiff that there was talk of replacing him (Item 29, Vol. 3, p. 47).

Mr. Quaranto testified that Hackett told him in December of 1982 that he did not want to fire Tavano but was receiving pres-

sure to do so from certain Democratic legislators (Item 29, Vol. 1, p. 36). I find that the main reason for Mr. Tavano's termination was not Hackett's conversations with certain legislators but the problems which he and Mr. Scozzafava were having with Mr. Tavano.

At some point, Mr. Scozzafava was called into the Democratic caucus to discuss the changes in his department and the problems he was having with some of the attorneys, including Mr. Tavano. Exactly when this occurred, before or after plaintiff's firing was approved, is unclear from the record (Item 29, Vol. I, pp. 33 and Vol. IV, p. 46).

In January or February of 1983, Mr. Hackett told plaintiff that he would have to fire him. His decision to terminate plaintiff appears to have been a reluctant one. Hackett said he was under pressure to fire Tavano, although he did not like to fire people (Item 29, Vol. IV, p. 44). Mr. Quaranto had sought to place Tavano in another post, but that position went to another candidate (Item 29, Vol. IV, p. 43; and Vol. I, p. 39).

Throughout this time, Mr. Tavano was in the non-competitive class of the New York State Civil Service Law. Those in the non-competitive class are appointed to their positions and are not required to take any Civil Service examination because they have special qualifications. Members of the non-competitive class who are veterans of United States military service are entitled to a hearing before dismissal. Mr. Tavano, a veteran, never made any request for a hearing.

Before turning to the law and its application to these facts, I note the many ironies inherent in this case.

As noted earlier, Mr. Tavano was appointed County Attorney in 1966 when the legislature changed from Democratic to Republican control. When he took office, Mr. Tavano promptly replaced all the Democratic Assistant County Attorneys with Republicans.

During oral argument, plaintiff's attorney observed that Mr. Tavano believed the Democrats would find a new position for him after he was terminated. However, this job went to a Democrat. Plaintiff, willing to secure a job through politics, sued to get his old post back only after certain legislators were unsuccessful in finding him another job.

Recent cases have established that the first amendment protects, in many circumstances, public employees from dismissal based on political affiliation. *Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Under *Elrod*, the initial question was whether a public employee held a "confidential" or "policy-making" position. Employees who had such positions were deemed not to be protected from the vagaries of political life, while those who performed ministerial duties could not be ousted from their jobs for political reasons. *See Paradise v. O'Laughlin*, 621 F.Supp. 694 (W.D.N.Y.1984).

In *Branti*, the court expanded the scope of protection from political discharges. *See Visser v. Magnarelli*, 530 F.Supp. 1165, 1171 (N.D.N.Y.1981). Even an employee with policy-making power may be immune from political terminations:

> [T]he ultimate inquiry is not whether the label "policy maker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement....

*Branti*, 445 U.S. at 518, 100 S.Ct. at 1294–95.

█ I find that plaintiff was not a policymaker. It is true that he had considerable latitude in handling his own caseload. There was little day-to-day supervision by the County Attorney and no guidelines as to case management.

Yet, the scope of plaintiff's discretion was limited to traditional legal representation. In *Layden v. Costello*, 517 F.Supp. 860, 861–62 (N.D.N.Y.1981), the court found that while plaintiff, an attorney with

the Department of Social Services, had independence in making legal judgments, he had no authority to set policy. His contact with the Commissioner, the actual policymaker, had been limited. Although plaintiff in the instant case worked for the County Attorney, not the Department of Social Services, the range of duties was similar. Plaintiff had little contact with Hackett or Scozzafava, and no supervisory authority over any other attorneys.

Even if plaintiff were considered to be a policymaker, defendants have failed to show that political affiliation or party loyalty is relevant to the effective discharge of the office of an attorney in Family Court. *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95.

The next inquiry is whether politics played a "substantial" or "motivating" factor in plaintiff's discharge. *Mt. Healthy City School Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). If plaintiff can demonstrate this, then the burden shifts to defendants to show, by a preponderance of the evidence, that there were legitimate, non-political reasons for Mr. Tavano's dismissal. *Visser,* 530 F.Supp. at 1169.

In many cases, whether a decision to terminate someone is or is not politically motivated is clear. For example, a new party assumes power, and employees who are affiliated with the other party are almost immediately dismissed (*Visser,* 530 F.Supp. 1165), or defendants virtually admit that the firing is politically motivated. (*Paradise,* 621 F.Supp. 694 and *Layden,* 517 F.Supp. 860).

In this case, Mr. Tavano was not summarily dismissed because of his Republican affiliation. He was appointed by Simon, a Democrat, and was retained by Simon's successor, Hackett, also a Democrat, for more than one year. Although plaintiff maintains that he was eventually fired to make room for a Democrat, this is disputed by defendants. On the facts of this case, the question of political motivation is uncomfortably close and almost inextricably interwoven with the issue of whether the reasons offered by defendants were legitimate.

Throughout the fall of 1982, two separate but related events were unfolding: 1) some Democratic legislators were urging that James Rodgers be given a position in the County Attorney's Office, and 2) Mr. Scozzafava, in attempting to reorganize his department, was becoming increasingly disenchanted with plaintiff and was letting Mr. Hackett know the full measure of his displeasure. Hackett also had reason for being displeased with Tavano's performance. While Mr. Tavano's dismissal may have been politically expedient, the issue is whether it was politically motivated.

In reviewing the testimony of all the witnesses, I have come to the conclusion that Hackett was truly concerned about the Tavano performance because of the many criticisms of Mr. Scozzafava. Clearly, Tavano did not get along well with the new Social Services head, Scozzafava, who was appointed in September of 1982. Scozzafava wanted the office to be administered in a more business-like fashion and wanted better communication between his caseworkers and the attorneys. There may have been lack of communication and difficulties with other Assistants as well, but unfortunately for Tavano, he became the main cause of concern by Hackett and Scozzafava. In my judgment, the reason for the termination was this, and not political motivation.

Even if the firing had been predominantly prompted by political motives, defendants have shown legitimate reason for plaintiff's termination. Although Tavano's performance was acceptable and even good in the opinion of the Family Court judges, Hackett had the right to take into account more than his court performance. Plaintiff's attitude, his willingness to expand his role as required by the new Social Services director, and his approach to his job were all legitimate concerns. Plaintiff's dismissal did not violate his rights under the first amendment.

During the trial, plaintiff claimed for the first time that he was entitled to a hearing after he was dismissed under New York Civil Service law. This position was never asserted in the complaint, nor during the pretrial hearings. It was certainly an unusual position for plaintiff to take. His attorney explained that it was not brought up earlier because, "It didn't cross my mind until we got into this business of non-competitive class." This statement was made even though Mr. Tavano had been County Attorney for ten years and Assistant County Attorney for four years. Plaintiff may not rely upon this argument in this trial.

The complaint is dismissed. Judgment shall be entered for the defendant.

So ordered.