Alexander M. **SELKIRK, Jr.,** Plaintiff,

v.

E. Thomas **BOYLE,** Suffolk County Attorney, Meg O'Regan, Deputy County Attorney, and the County of Suffolk, Defendants.

**No. 89 CV 1289.**

United States District Court,
E.D. New York.

May 23, 1990.

Patrick Sweeney, Commack, N.Y., for plaintiff.

Robert A. Cabble, Suffolk County Atty., Hauppauge, N.Y., for defendants.

## MEMORANDUM and ORDER

BARTELS, District Judge.

The plaintiff, Alexander M. Selkirk, Jr. ("Selkirk" or "plaintiff"), a former Assistant County Attorney for Suffolk County, filed this suit pursuant to 42 U.S.C. Section 1983 against the County of Suffolk (the "County"), Suffolk County Attorney E. Thomas Boyle ("Boyle") and Deputy Suffolk County Attorney Meg O'Regan ("O'Regan"), seeking injunctive relief and monetary damages. He alleges that the defendants violated his civil rights under the First and Fourteenth Amendments to the Constitution by terminating his employment for purely political reasons. He further alleges that the County has a custom, policy or practice of discharging individuals based upon their political beliefs. The de-

fendants deny these allegations and move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure claiming *inter alia* that (a) even if plaintiff's termination was politically motivated he has failed to state a cognizable claim; (b) there was a valid apolitical reason for plaintiff's dismissal; and (c) Boyle and O'Regan are entitled to qualified immunity.

## BACKGROUND

In March 1980 Republican County Attorney David H. Gilmartin appointed Selkirk, also a Republican, an Assistant County Attorney for Suffolk County, a position which is exempt from the New York Civil Service Law and is in the nature of an at will employment, i.e., he serves at the pleasure of the County Attorney. The defendants admit that an assistant county attorney can effectively discharge his duties regardless of his political affiliation.[1]

It is also undisputed that initially Selkirk was assigned to the Torts Unit where he represented the County in negligence actions brought against it. Typically Selkirk was responsible for preparing and trying to conclusion slip and fall and automobile accident cases, however, he had no independent authority to enter into any settlements. In February 1986, Selkirk was transferred to the Family Court where he remained until March 1987. While assigned to the Family Court Selkirk represented the Department of Social Services and its clients in support related matters. During the balance of his tenure Selkirk was involved in the trial of paternity cases, the disposition and trial of cases involving juvenile delinquents and persons in need of supervision, and the enforcement of support proceedings under the Uniform Support of Dependent's Act. At no time did Selkirk exercise discretion in any matter even remotely related to policymaking. Furthermore, during his term of employment Selkirk did not hold a supervisory position nor did any attorneys report to him.

In January 1988 Boyle, who is a member of the Democratic Party, was appointed

---

1. Defendants' Answer at paragraph 6.

County Attorney for Suffolk County. Following his appointment Boyle became aware of problems within the Family Court unit and asked Meg O'Regan, then chief of that bureau, to draft a reorganization plan, execution of which entailed the evaluation of attorneys assigned to that unit, including Selkirk, whom she recommended be dismissed for incompetence.[2] Selkirk's first personal encounter with Boyle occurred on May 3, 1988, at which time Boyle indicated that he intended to terminate Selkirk's employment. He did, however, offer Selkirk the option of voluntarily submitting his resignation and told him to think it over. On May 6, 1988, O'Regan, who is also a member of the Democratic Party, reiterated Boyle's position and Selkirk advised her that he would not submit his resignation. Subsequently, on May 9, 1988, Selkirk was informed that effective May 13, 1988, his employment would be terminated.

Selkirk alleges that his discharge was politically motivated. He maintains that Boyle terminated him because generally, as Republican Committeeman for the Town of Islip[3] he was involved in political matters and specifically, because he actively campaigned for and supported the Republican candidate for County Executive[4] in the 1987 general election. In addition, Selkirk alleges that all the assistant county attorneys who were members of the Islip Town Republican Committee and numerous other assistants who supported the Republican candidate for County Executive in 1987 were asked to submit their resignation. Selkirk further alleges that with only one exception, himself, all of the other assistants from the Town of Islip acceded to Boyle's request and submitted letters of resignation. Furthermore, Selkirk alleges that the vacancies created by their departure were filled by members and supporters of the Democratic Party.

On the other hand, Boyle maintains that at the time he dismissed Selkirk he was unaware of Selkirk's political affiliation or that he was a Republican Committeeman for the Town of Islip. Furthermore, he alleges that he discharged Selkirk because he was incompetent, not because he was a Republican who actively campaigned for Republican candidates. Boyle claims that O'Regan's random audit of Selkirk's performance revealed a pattern of gross incompetence. Specifically, O'Regan noted that a Family Court proceeding was dismissed because Selkirk failed to call essential witnesses and Selkirk's demeanor, both in and out of court, was unprofessional and amateurish. O'Regan reported that Selkirk (1) was, at times, ill-prepared for court appearances; (2) occasionally read magazines or slept while court was in session; (3) often spent several hours a day sleeping, reading or making personal phone calls in his office; and (4) avoided cases that were assigned to him. Boyle alleges that his decision was also based on memoranda placed in Selkirk's personnel file by the preceding county attorney—who, like Selkirk, was a Republican—which indicated that Selkirk had previously been disciplined for unprofessional conduct.

## DISCUSSION

■ The standard for granting summary judgment is well known. Only when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," is summary judgment granted. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lund's Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2nd Cir.1989); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2nd Cir.1987). Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*);

---

2. O'Regan's memorandum to Boyle dated April 19, 1988.

3. Selkirk held the position of Republican Committeeman for the Town of Islip at the time he was appointed and throughout his tenure as an assistant county attorney.

4. The Democratic candidate won the election and appointed Boyle County Attorney.

*Donahue*, 834 F.2d at 57; *Winant v. Carefree Pools*, 709 F.Supp. 57 (E.D.N.Y.), *aff'd*, 891 F.2d 278 (2nd Cir.1989) (unpublished opinion). Last, while "summary judgment allows the Court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial" ... the Court is cautioned, however, that summary judgment must be "used selectively to avoid trial by affidavit." (Citations omitted). *Donahue*, 834 F.2d at 57; *Winant*, 709 F.Supp. at 59. The claimed legitimate apolitical reasons offered by the defendants for Selkirk's dismissal, along with their denial that Selkirk was terminated because of his political affiliation, pose crucial factual matters which cannot be determined by the Court in a motion for summary judgment. *O'Connell v. Gorski*, 715 F.Supp. 1201, 1203 (W.D.N.Y.1989).

### A. Failure to State a Cognizable Claim

The defendants allege that notwithstanding any factual dispute, they are entitled to summary judgment because, as a matter of law, political affiliation is an appropriate requirement for an assistant county attorney of Suffolk County, and since Selkirk's political affiliation differs from Boyle's he can not satisfy the condition.

The genesis of any discussion with respect to political patronage dismissals begins with two seminal Supreme Court cases, *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In *Elrod* the Court held that the dismissal of public employees based strictly on their party affiliation could not withstand constitutional scrutiny under the First Amendment unless the firing authority could demonstrate that the position involved some type of "policymaking" responsibility. The corollary, of course, is that an individual with "policymaking" responsibility could not challenge their dismissal, even if it was politically motivated.

In *Branti* the Supreme Court evaluated the civil rights claim of two assistant public defenders who had been dismissed for political reasons, and held that allegiance to the political party in control of the county government was not an appropriate requirement for the position. Recognizing a distinction between public defenders, whose primary responsibility is to represent individual citizens in controversies with the State, *Id.* at 519, 100 S.Ct. at 1295 and prosecuting attorneys, who have "broader public responsibilities," the Court left open the question this Court must answer—whether prosecuting attorneys "could be dismissed on grounds of political party affiliation or loyalty." *Id.* at 519 n. 13, 100 S.Ct. at 1295 n. 13, citing without comment the decision in *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir.), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977).

More notable than the holding in *Branti* is the Court's announcement of the now oft-quoted standard for divining whether certain positions fall within the exception to the prohibition against patronage dismissals carved out by *Elrod*. After reasoning that "those positions for which party affiliation is a very important legitimate consideration and those positions denominated "policymaking" are not necessarily [sic] coextensive," *Ness v. Marshall*, 660 F.2d 517, 520 (3rd Cir.1981), the Court concluded that the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. *Id.* at 518.

■ Despite the *Branti* Court's guidance, "identifying generic categories of positions where partisan selection and rejection are permissible has ... proven to be an elusive and intractable task." *Hawkins v. Steingut*, 829 F.2d 317, 320 (2nd Cir. 1987), quoting, *Jimenez–Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241 (1st Cir. 1986) (en banc), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). Nevertheless, the Court concludes that even if Selkirk's discharge was politically motivated his constitutional rights were not

violated if (a) an assistant county attorney for Suffolk County is deemed a "policymaker" or (b) the County Attorney can show that affiliation with his political party is necessary for the effective performance of the assistants in his office. The defendants have failed to show either. In respect to the latter test, the present County Attorney admits that "political affiliation is not a qualifying factor for the position of assistant county attorney." [5] Furthermore, no implication can be drawn from the circumstances nor do the defendants assert that to effectively defend the County in mundane tort litigation or prosecute on behalf of the County in the Family Court an assistant county attorney must evince a certain political philosophy or adhere to a party 'line'.

With respect to the question of whether an assistant county attorney is a "policymaker" the defendants have not proffered one illustration to support such a conclusion. In their affidavits, the defendants do not refute plaintiff's assertions regarding the nature of his responsibilities, nor do they indicate that his tasks were unusual or extraordinary. Rather it appears that his assignments reflect the customary duties of any assistant county attorney. Specifically, the defendants do not challenge Selkirk's pronouncement that his duties were essentially ministerial in nature, to wit: he had no authority to set policy, no supervisory authority over other attorneys, settled tort cases only pursuant to directives he received from an internal management committee, and never participated in any forum wherein departmental policy was discussed and/or established.

The defendants' reliance on a string of cases holding that municipal attorneys in positions similar to Selkirk's were not protected by *Elrod* and *Branti*, is irrelevant and misplaced. The very essence of the following cases required an examination of the duties of each plaintiff to ascertain whether his position entailed "policymaking" responsibility or required political fealty to effectively perform. The Court need

not undertake such an analysis here because the Defendants have already done so and concluded to the contrary. *See Livas v. Petka*, 711 F.2d 798 (7th Cir.1983) (holding in *dicta*, that a prosecutor is entitled to absolute loyalty from his assistants and could terminate them for political reasons); *Mummau v. Ranck*, 687 F.2d 9 (3rd Cir. 1982) (position of assistant district attorney is one for which party affiliation is an appropriate requirement); *Ness v. Marshall*, 660 F.2d 517 (3rd Cir.1981) (position of city solicitor and assistant solicitor is one for which party affiliation is an appropriate requirement); *Newcomb v. Brennan*, 558 F.2d 825, 830 (7th Cir.), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977) (deputy city attorney who functions in a highly discretionary capacity and makes decisions that either create or implement policy could be dismissed for purely political reasons); *O'Connell*, 715 F.Supp. at 1203–1205 and *Finkelstein v. Barthelemy*, 678 F.Supp. 1255 (E.D.La.1988) (assistant county attorney and city attorney, respectively, are policymaking positions from which one can be dismissed for purely political reasons).

On the other hand, Selkirk's situation is analogous to that of the plaintiff in *Tavano v. County of Niagara, N.Y.*, 621 F.Supp. 345 (W.D.N.Y.1985), *aff'd* 800 F.2d 1128 (2nd Cir.1986) (unpublished opinion). In *Tavano* the court found that an assistant county attorney who practiced in Family Court had considerable latitude in handling his caseload and functioned with little day to day supervision. Despite this finding the court held that he was not a policymaker; therefore, he could not be dismissed for political reasons. Furthermore, the court concluded that "[e]ven if he were considered to be a policymaker, [the] defendants have failed to show that political affiliation or party loyalty is relevant to the effective discharge of the office of an attorney in Family Court." *Id.* at 350. Under the circumstances it is clear that Selkirk could not be discharged solely for political reasons. Therefore, defendants' motion for summary judgment is denied.

---

**5.** Affidavit of E. Thomas Boyle in support of motion for summary judgment at paragraph 12;

Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 2.

## B. Qualified Immunity
### Civil Damages

As a threshold matter the Court notes that qualified immunity is an issue only if the jury finds that Selkirk's termination was politically motivated. If, on the other hand, the jury finds that Selkirk was discharged because he was incompetent, it would be irrelevant.

■ Failure of the defendants to prevail on the foregoing grounds does not, however, end the inquiry. There is still the question of qualified immunity which is recognized as a legal not a factual question. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985); *Rakovich v. Wade*, 850 F.2d 1180, 1201–1202 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). The doctrine of qualified immunity shields government officials from civil damages liability for discretionary acts performed in their official capacity so long as their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982). "The general rule of qualified immunity is intended to provide government officials with the ability to 'reasonably [ ] anticipate when their conduct will give rise to liability for damages.'" *Anderson*, 483 U.S. at 646, 107 S.Ct. at 3042. Consequently, Boyle and O'Regan are entitled to qualified immunity if they could reasonably have believed that the state of the law with respect to patronage dismissals of governmental attorneys, like Selkirk, was not established.

■ During the post *Elrod* and *Branti* era the state of the law with respect to patronage dismissals was unsettled. *Hawkins*, 829 F.2d at 320–321. Relying on the doctrine of qualified immunity, courts have recently granted summary judgment for the defendants in cases involving municipal attorneys, like Selkirk, who alleged that their politically motivated dismissals violated their civil rights. *Clark v. Brown*, 861 F.2d 66 (4th Cir.1988); *O'Connell*, 715 F.Supp. at 1206–1206; *Finkelstein*, 678 F.Supp. at 1265–1266. Moreover, in view of the fact that the preponderance of cases prior to May 1988 held that purely politically motivated dismissals of government attorneys in positions comparable to Selkirk's did not constitute a First Amendment violation, *Livas*, 711 F.2d 798; *Mummau*, 687 F.2d 9; *Ness*, 660 F.2d 517; *Newcomb*, 558 F.2d 825; *Finkelstein*, 678 F.Supp. at 1261, Boyle and O'Regan are entitled to qualified immunity because they could reasonably have concluded that their actions did not violate Selkirk's constitutional rights.

■ As to the defendant Suffolk County, however, there can be no immunity defense. The law is well settled that "[q]ualified immunity protects 'individuals acting within the bounds of their official duties, not the governing bodies on which they serve.'" *Finkelstein*, 678 F.Supp. at 1261, *citing Owen v. City of Independence, Mo.*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673, *reh'g denied*, 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980).

### Injunctive Relief

■ In addition to compensatory damages Selkirk seeks to enjoin the defendants from interfering with any future lawful employment as an assistant county attorney, back pay, and reinstatement to his former position along with other related benefits. Qualified immunity does not bar actions for declaratory or injunctive relief. *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir.1989). Consequently, a finding of qualified immunity with respect to the defendants Boyle and O'Regan is not dispositive of Selkirk's claim. *Rodriguez–Burgos v. Electric Energy Authority*, 853 F.2d 31 (1st Cir.1988); *Morales Morales v. Rafael Arias*, 856 F.2d 396, 398 (1st Cir.1988). In *Morales Morales*, the court held, in the context of a summary judgment motion, that its ruling that the defendant was entitled to qualified immunity from damages did not preclude a finding that plaintiff was entitled to reinstatement because political affiliation was

**76**

not an appropriate requirement for his position.

In sum the Court holds that an Assistant County Attorney in Suffolk County is neither a "policymaker" nor has the hiring authority demonstrated that party affiliation is an appropriate requirement for the effective performance of an assistant county attorney. Accordingly, if the jury finds that Selkirk was not dismissed for incompetence he would be entitled to injunctive relief as well as civil damages from the County provided he satisfied the elements of a § 1983 claim.

SO ORDERED.