P. **Andrew VONA and Daniel E. Seaman,
Plaintiffs–Appellants,**

v.

**COUNTY OF NIAGARA, NEW YORK,
Glenn S. Hackett, Individually and as
County Attorney for the County of Niagara, Bonita L. Quaranta, Individually
and as Commissioner of the Niagara
County Department of Social Services,
John S. Tylec, Individually and as Chairman of the Niagara County Legislature
and Robert E. Ziske, Individually and as
the Niagara County Department of Social Services Attorney, Defendants–Appellees.**

**Nos. 820, 821, Dockets 96–7765, 96–7815.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1997.

Decided July 23, 1997.

David C. Douglas, Lockport, NY (Jackson, Wilson & Douglas, George V.C. Muscato, Muscato, DiMillo & Vona, Lockport, NY, of counsel), for Plaintiffs–Appellants.

Nicholas J. Sargent, Harry F. Mooney, Buffalo, NY (Edward V. Jeffrey, Mark Moody, Hurwitz & Fine, Buffalo, NY, of counsel), for Defendants–Appellees.

Before: VAN GRAAFEILAND, MESKILL and KEARSE, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiffs-appellants P. Andrew Vona and Daniel E. Seaman brought separate actions pursuant to 42 U.S.C. § 1983 alleging that the County of Niagara, and others, fired them because of their political affiliation in violation of their rights under the First and Fourteenth Amendments. Seaman also alleged a state law cause of action under Section 75 of the New York Civil Service Law.

Plaintiffs and defendants both moved for summary judgment on the issue of whether plaintiffs were entitled to First Amendment protection against politically motivated dismissals. The United States District Court for the Western District of New York, Skretny, *J.*, denied plaintiffs' motion and granted defendants' cross-motion, ruling that Vona and Seaman held positions that were not protected by the First Amendment from politically motivated dismissals. The district court then entered final judgment in favor of defendants and against plaintiffs pursuant to Fed.R.Civ.P. 54(b). On that same day, the case was closed without any ruling on the remaining state law claim.

Vona and Seaman appeal the decision of the district court arguing that the district court erroneously granted defendants summary judgment on the First Amendment issue. Seaman also argues that the district court erroneously entered final judgment against him on his state law cause of action.

We affirm the district court's grant of summary judgment on the First Amendment issue and remand with directions to clarify the status of Seaman's state law claim.

## BACKGROUND

Seaman and Vona were hired as Assistant Social Services Attorneys (assistant attorneys) for the Niagara County Department of Social Services (Department) in 1990 and 1991, respectively. Both plaintiffs are affiliated with the Republican Party, and were hired at the request of the then Republican-controlled Niagara County Legislature.

In November 1993, the Democratic Party won a majority of the seats in the Niagara County Legislature. Following the election, Seaman and Vona received notice that their employment had been terminated, effective January 21, 1994.

On January 19, 1994, Vona commenced an action pursuant to 42 U.S.C. § 1983 against the County of Niagara; Glenn S. Hackett, individually and as County Attorney for the County of Niagara; Bonita L. Quaranta, individually and as Commissioner of the Niagara County Department of Social Services; and John S. Tylec, individually and as Chairman of the Niagara County Legislature. Vona alleged that defendants violated his rights under the First and Fourteenth Amendments by terminating his employment because of his political affiliation.

On January 28, 1994, Seaman commenced a similar action, including the same allegations and adding the Department of Social Service Attorney, Robert E. Ziske, as a defendant. Seaman also alleged a separate

cause of action under Section 75 of the New York Civil Service Law.[1]

### Motions for Summary Judgment

By November 1, 1994, both Vona and Seaman had moved for summary judgment on the following issues: whether the position of assistant attorney is protected by the First Amendment from patronage dismissal; whether plaintiffs' protected First Amendment activities were a substantial or motivating factor in their dismissal; and whether plaintiffs would not have been terminated in the absence of their protected conduct. Defendants cross-moved for summary judgment on the same issues.

On March 31, 1995, the district court addressed the motions of Vona and Seaman in a single decision.[2] The district court granted plaintiffs' motion with respect to the claim that their political affiliation was a substantial and motivating factor in their dismissals. Further, the district court granted Vona's but denied Seaman's motion on the issue of whether plaintiffs would have been terminated in the absence of the protected conduct. Finally, concluding that the scope of the assistant attorney position remained unclear, the district court denied the motions for summary judgment on the issue of whether the position was protected from politically motivated dismissal.

### Rule 43(e) Hearing

On January 16 and 17, 1996, a hearing was held before the district court pursuant to Fed.R.Civ.P. 43(e) specifically for the purpose of resolving the potentially dispositive issue of whether plaintiffs' jobs were protected from politically motivated dismissal.[3] *Argus v. Eastman Kodak Co.*, 801 F.2d 38, 42 n. 2 (2d Cir.1986) (holding that a district court may, in its discretion, conduct a Rule 43(e) hearing on a motion for summary judgment).

In that hearing, both parties presented testimony and other evidence establishing the following facts.

Defendant Quaranta, a registered Democrat, is the Commissioner of the Niagara County Department of Social Services. As Commissioner, Quaranta is responsible for the overall management and supervision of the Department, including the hiring of Department employees. Commissioner Quaranta reports to the Niagara County Legislature's Social Services Committee, which was controlled by the Democrats at the time plaintiffs were fired. Although the Department is governed by state statutes and regulations, the Commissioner's office has discretion to formulate policy with regard to the Department's services. Commissioner Quaranta testified that she did not know the political affiliation of Vona or Seaman.

Plaintiffs Vona and Seaman worked as part-time assistant attorneys for the Department. The job description of an assistant attorney requires that the attorney

assist[ ] the Social Services Attorney in conducting litigation, and performing legal research, assist[ ] and provid[e] legal counsel to the Social Services Department, assist[ ] in preparation of and representation at Fair Hearing for the general public as clients, and do[ ] related work as necessary to assist in the functioning of the legal division of the Social Services Department.

Although an assistant attorney's job description is broadly defined, the Department generally has used assistant attorneys in a narrow capacity. Assistant attorneys are assigned either to the child protective services unit or the child support enforcement services unit. The child protective unit handles, among other things, cases of child abuse or child neglect. The child support unit is responsible for establishing and enforcing support orders against the child's noncustodial

---

1. Section 75 of New York's Civil Service Law requires that persons holding certain civil service positions shall not be removed or subjected to disciplinary penalty except for incompetency or misconduct shown after a hearing. N.Y. Civ. Serv. Law § 75 (McKinney 1983 & Supp.1997). Seaman alleged that he was removed without a hearing in violation of section 75.

2. The suits filed by Vona and Seaman were eventually consolidated by order on September 6, 1995.

3. Rule 43(e) provides that "[w]hen a motion is based on facts not appearing of record the court may ... direct that the matter be heard wholly or partly on oral testimony or deposition."

parent. At times, these units must petition the local Family Court in order to impose services on a family, remove a child from their home, or establish and enforce support orders against the child's noncustodial parent. When a court proceeding is required, assistant attorneys are called on to represent the Department in court. Assistant attorneys are primarily responsible for preparing and filing petitions in Family Court, handling child support cases, child welfare cases or paternity suits and generally conducting all courtroom appearances.

Although assistant attorneys are responsible for the day-to-day court proceedings, assistant attorneys are not responsible for the general investigation or management of individual cases. Assistant attorneys do not supervise or manage any employees of the Department nor do they have regular contact with elected officials.

However, the Commissioner and Social Service Attorney Robert Ziske have at times met with assistant attorneys to discuss particular cases or issues of concern to the Department. For instance, Social Services Attorney Ziske testified that one assistant attorney advised Ziske on how to develop a new program to collect judgments against noncustodial parents who were delinquent in their child support. Another assistant attorney testified that he was called upon to advise the Commissioner as to the handling of a particular adoption case and to discuss and advise the handling of a case involving a local school district and a foster child.

While other instances of communication between the Commissioner and assistant attorneys were cited during the hearing, all five assistant attorneys called to testify stated that they were never involved in decisions relating to political matters.

4. Although the district court decided this case on motions for summary judgment, the court's written opinion has a section entitled "Findings of Fact." Therefore, the district court arguably turned the Rule 43(e) hearing into a bench trial by seemingly making findings of disputed facts on which its conclusions of law were based. This, of course, would be improper on a motion for summary judgment. *Miner v. City of Glens*

*District Court Decision*

After reviewing the parties' respective submissions and the evidence presented at the hearing, the district court held that the position of assistant attorney is not entitled to First Amendment protection against politically motivated dismissal. Based on this conclusion, the district court denied plaintiffs' motion for summary judgment and granted defendants' cross-motion for summary judgment.[4] On June 5, 1996, without mentioning Seaman's state law claim, the court entered final judgment in favor of defendants pursuant to Fed.R.Civ.P. 54(b). The case was closed on the same day. Vona and Seaman filed a timely notice of appeal on June 27, 1996.

## DISCUSSION

Vona and Seaman appeal from a judgment that granted defendants' motion to dismiss fewer than all of their claims, and at the end of the decretal portion of the district court opinion appears a direction to enter final judgment in favor of all defendants pursuant to Fed.R.Civ.P. 54(b). That rule provides in pertinent part:

> When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

However, the order in this case, while citing Rule 54(b), does not expressly determine that there is "no just reason for delay" as required by the rule. Although this omission would normally require us to question whether we have jurisdiction to decide this appeal at this time, *see, e.g., HBE Leasing Corp. v. Frank*, 48 F.3d 623, 631–32 (2d Cir.1995) (Rule 54(b) "makes clear that if

*Falls*, 999 F.2d 655, 661 (2d Cir.1993). However, we do not find that the district court erroneously resolved genuine issues of material fact. Indeed, plaintiffs do not contend that the district court erroneously resolved disputed issues of fact but instead argue that "[t]he only reasonable conclusion to be drawn from the evidence in the instant case is that the Appellants' jobs are protected from political termination."

the District Court does not *both* direct entry of judgment *and* expressly determine that there is no just reason for delay, then its order or decision is not final."), we conclude that there was a final judgment in the present case, for purposes of appealability under 28 U.S.C. § 1291, because the case was marked "closed," presumably on order of the district court. *See generally Bankers Trust Co. v. Mallis,* 435 U.S. 381, 385 n. 6, 98 S.Ct. 1117, 1120 n. 6, 55 L.Ed.2d 357 (1978) (per curiam) (factor that determines whether an order set forth in a separate document and entered in the docket is a final judgment is "whether the district court intended the judgment to represent the final decision in the case"). Even though a document does not comprehensively list all of the court's decisions, we may consider it to be a final judgment if it is clear that the court so intended it. *See e.g., Ellender v. Schweiker,* 781 F.2d 314, 318 (2d Cir.1986).

*First Amendment Issue*

The first issue we address is whether the district court properly granted summary judgment on the First Amendment issue. We hold that, as a matter of law, plaintiffs are not entitled to First Amendment protection against political patronage dismissals and we affirm the district court's summary judgment in favor of defendants.

1. *Standard of Review*

We review *de novo* a district court's grant of summary judgment to determine whether there are genuine issues of material fact requiring a trial. *Regan v. Boogertman,* 984 F.2d 577, 579 (2d Cir.1993). In assessing the record, all ambiguities and reasonable inferences are viewed in a light most favorable to the nonmoving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

"For such a judgment to be proper there must be no genuine issue of material fact, and the moving party must be entitled to judgment as a matter of law." *Regan,* 984 F.2d at 579. In this appeal, plaintiffs do not argue and we do not find that there are genuine issues of material fact to be tried. Instead, plaintiffs argue that the evidence,

viewed in its entirety, requires a finding that their jobs are protected from politically motivated dismissal. Therefore, the only question to be decided is whether the district court properly determined that defendants were entitled to judgment as a matter of law.

2. *Political Patronage Dismissals*

In *Elrod v. Burns,* the United States Supreme Court held that political patronage dismissals infringe on an employee's First Amendment right to political belief and association. *Elrod,* 427 U.S. 347, 355–60, 96 S.Ct. 2673, 2680–83, 49 L.Ed.2d 547 (1976) (plurality) (Brennan, *J.*); *id.* at 374–75, 96 S.Ct. at 2690 (Stewart, *J.,* concurring). However, Justice Brennan stated that these First Amendment rights are not absolute and may be constitutionally abridged if such action "further[s] some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained ... outweigh[s] the loss of constitutionally protected rights." *Id.* at 363, 96 S.Ct. at 2685. Justice Brennan explained that the government interest in insuring that the policies of a new administration not be undercut by politically disloyal employees was important enough to justify some but not all patronage dismissals. *Id.* at 367, 96 S.Ct. at 2687. Justice Brennan stated that "[l]imiting patronage dismissals to policymaking positions is sufficient to achieve this governmental end." *Id.*

In *Branti v. Finkel,* the Supreme Court further clarified which patronage dismissals could constitutionally achieve the important governmental end announced in *Elrod. Branti,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The Court noted that "*Elrod* recognize[d] that party affiliation may be an acceptable requirement for some types of government employment." *Id.* at 517, 100 S.Ct. at 1294. However, the Court decided that a determination of whether a position is "policy-making" does not necessarily resolve the issue of whether party affiliation is an acceptable requirement for that position. *Id.* at 518, 100 S.Ct. at 1294–95. As an example of the insufficiency of the "policy-making" rule, the Court pointed to the position of a state university football coach and the posi-

tion of speech writer for the Governor of a state. *Id.* The Court noted that even though a football coach formulates policy, no one could argue that a coach affiliated with the Democrats could not effectively perform his job under a Republican-run state government. *Id.* On the other hand, the Court stated that a Governor may appropriately believe that the official duties of a speech writer, who does not participate in policymaking, cannot be performed effectively unless that person shares the Governor's political beliefs. *Id.* Therefore, the Court concluded, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.*

We have interpreted the *Branti* test to mean "that political affiliation is an appropriate requirement [for the position] when there is a rational connection between shared ideology and job performance." *Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988). We explained that this is a better interpretation of the language in *Branti* because a literal reading of the language would exempt very few positions from First Amendment protection. *Id.*

■ In deciding whether there is a rational connection between shared ideology and job performance, "this court's challenge is to discern the *duties inherent* in the offices held by the plaintiffs." *Gordon v. County of Rockland,* 110 F.3d 886, 888 (2d Cir.), *petition for cert. filed,* 65 U.S.L.W. 3840 (U.S. June 16, 1997); *see also Regan,* 984 F.2d at 580 (a court must look at the power with which the position is vested by law, and which is inherent in the office); *Williams v. City of River Rouge,* 909 F.2d 151, 154 (6th Cir.1990) ("When examining a public office for first amendment protection against politically-motivated dismissal, the relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office."); *O'Connell v. Gorski,* 715 F.Supp. 1201, 1203 (W.D.N.Y.1989) ("The determinative inquiry ... is not what functions

the public employee actually performed but rather what duties he was actually empowered to perform and which ones were inherent in the public office he held."). If political loyalty is reasonably connected to performance of the inherent duties of the office, then that office is not protected from patronage dismissals. *Regan,* 984 F.2d at 580–81 (holding that, based on the inherent duties of a Deputy Tax Collector, position was not protected from politically motivated dismissal).

### 3. *Assistant Social Service Attorney*

■ In the present case, plaintiffs argue that shared ideology is not rationally connected to the job performance of an Assistant Social Service Attorney for the Niagara County Department of Social Services. Plaintiffs point to evidence showing that assistant attorneys are employed only to petition the Family Court and to handle Family Court proceedings for the Department. In addition, plaintiffs also point to the testimony of five assistant attorneys who testified that they had never been involved in policy-making decisions and were involved only in day-to-day court proceedings. However, as noted above, the ultimate inquiry is not what duties the individual assistant attorneys have actually performed or whether they have been involved in policy-making decisions. Instead, we must focus on the inherent duties of the position to determine if there is a rational connection between shared ideology and job performance.

■ Our analysis of the inherent duties of an assistant attorney focuses on the job description of that position. The job description of an assistant attorney requires the attorney to "assist[ ] and provide legal counsel to the Social Services Department ... and do[ ] related work as necessary to assist in the functioning of the legal division of the Social Services Department." Obviously this description is broad and not well defined. However, as the Supreme Court has indicated, "[a]n employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position" not protected from patronage dismissals. *Elrod,* 427 U.S. at 368, 96 S.Ct. at 2687.

The broad duty of providing legal counsel to the Department and assisting the legal division could entail not only petitioning the Family Court and handling court proceedings but also advising the Social Service Attorney and the Commissioner on a wide variety of Department matters. In fact, several assistant attorneys and Social Service Attorney Ziske cited examples of assistant attorneys providing legal advice to the Department, including advising the Department on the implementation of a new program to collect judgments against noncustodial parents and advising the Commissioner on sensitive cases.

The duty of advising the Department and its legal division may at times require assistant attorneys to be employed in a way that requires confidentiality of information encompassing political and ideological concerns. See *O'Connell*, 715 F.Supp. at 1203–05 (Assistant County Attorney whose inherent duties required him to advise county officers and employees was in a confidential position and fact that he was assigned only to handle litigation in Family Court did not change confidential nature of position); *Williams*, 909 F.2d at 154–55 (inherent duties requiring City Attorney to give City legal advice, act as City's solicitor and handle City's litigation indicates a relationship of confidence and trust necessary for effective job performance). Because the Commissioner is accountable to the Niagara County Legislature and because "many legal decisions made by a governmental entity encompass ideological and political concerns ... the chief executive of such an entity and his chief legal advisor need to appoint people who are loyal to and share the same or similar political ideology." *O'Connell*, 715 F.Supp. at 1204 (citing *Ness v. Marshall*, 660 F.2d 517 (3d Cir.1981), and holding that position of assistant county attorney was not protected from patronage dismissal).

■ Commissioner Quaranta's lack of knowledge of plaintiffs' political affiliation and her failure to use assistant attorneys in a capacity requiring shared ideology is not determinative of the present issue. Based on the inherent duties of an assistant attorney, the Commissioner for the Niagara County Department of Social Services might wish to rely on these attorneys for legal advice necessary to implement policy encompassing ideological and political concerns. Therefore, while the Commissioner might employ assistant attorneys without regard to shared ideology, our decision here should not prevent her and her successors from using assistant attorneys in tasks requiring shared ideology. See *Ness*, 660 F.2d at 522 ("To elaborate upon one of Justice Stevens' examples [in his *Branti* opinion], while it is conceivable that a governor might employ speech writing assistants without regard to their political affiliation, we would not want to prevent governors in general from using political affiliation as a criterion for such positions."); *Williams*, 909 F.2d at 155 (deciding that consideration of individual tasks performed by the plaintiff employed as part-time city attorney "would tend to bind a later mayor to employ the City Attorney in the way that the official had been employed in the past").

The decision in *Branti* also aids our analysis of whether the inherent duties of an assistant attorney call for political loyalty. See *Gordon*, 110 F.3d at 889 (using *Branti* analysis in determining if Assistant County Attorneys are protected from patronage dismissals). In *Branti*, the Supreme Court decided whether the position of public defender was protected from patronage dismissals. *Branti*, 445 U.S. at 519–20, 100 S.Ct. at 1295–96. The Court held that the position of public defender was protected from patronage dismissals because a public defender's primary duty relates to the needs of his individual clients and not partisan politics and any confidential information received from this relationship has no bearing on partisan political concerns. *Id.*

Unlike the public defenders in *Branti*, assistant attorneys represent the County rather than individual clients. In addition, the inherent duties of the assistant attorneys may require them to be privy to confidential information held by the Commissioner and the Department. Since this information may encompass political and ideological concerns, assistant attorneys, unlike the public defenders in *Branti*, have inherent duties that may include political concerns.

Other factors that may influence a determination of whether there is a rational connection between shared ideology and job performance "include whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders." *Vezzetti v. Pellegrini,* 22 F.3d 483, 486 (2d Cir.1994). However, analysis of these factors must be made in the context of the power that is inherent in the office. *See Regan,* 984 F.2d at 580.

In the present case, we find that only three of these enumerated factors support defendants' argument. First, the inherent power of the position may require an assistant attorney to influence government programs. Second, an assistant attorney could be required to be responsive to partisan politics. Finally, the position of assistant attorney requires some technical competence and expertise. On the other hand, the record indicates that it is unlikely that an assistant attorney is perceived by the public as a policymaker. Also, an assistant attorney is apparently not authorized to speak in the name of a policymaker, does not supervise or manage any employees of the Department and does not have regular contact with elected officials. Finally, the record is not clear on whether the position of assistant attorney is exempt from civil service protection.

We emphasize that these factors are not weighed against each other but instead are used as a guide in our analysis of the present issue. *Gordon,* 110 F.3d at 890 (factors announced in *Vezzetti* should not be mechanically applied). Because the inherent power of the assistant attorney position may require the occupant to influence government programs and be responsive to politics, we are convinced that these factors favor the defendants here.

As in *Gordon,* appellants rely heavily on *Tavano v. County of Niagara,* 621 F.Supp. 345 (W.D.N.Y.1985), *aff'd,* 800 F.2d 1128 (2d Cir.1986), for the proposition that they are protected from politically motivated dismissal. *Gordon,* 110 F.3d at 891 n.7. In *Tavano,* the district court decided that the exact same assistant attorney position we consider today was protected from political dismissal. We affirmed the opinion by summary order. However, as noted in *Gordon,* the district court in *Tavano* also found that the plaintiffs in that case were not terminated for political reasons. "Therefore, the district court's conclusion that the [assistant social service attorneys] were entitled to First Amendment protection was not essential to its decision and carries no precedential weight. That we considered the district court's decision as turning on [this] factual question . . . is made clear by the fact that we affirmed summarily." *Id.* In addition, *Tavano* "predate[s] *Regan* and *Vezzetti,* which of course, are controlling on this court." *Id.*

Based on our analysis of the inherent duties of an assistant attorney, we conclude that there is a rational connection between shared ideology and job performance and we affirm the summary judgment in favor of defendants on the First Amendment issue.

*Seaman's State Law Cause of Action*

Plaintiffs, in their joint brief, also argue that the district court erroneously entered final judgment on Seaman's state law cause of action under Section 75 of the New York Civil Service Law. Plaintiffs note that defendants' motion for summary judgment was limited to plaintiffs' federal cause of action under 42 U.S.C. § 1983 and did not raise Seaman's state law cause of action. Plaintiffs essentially contend that, although the summary judgment motion was limited to its federal cause of action, the district court, in addition to entering final judgment as to that claim, erroneously entered final judgment as to Seaman's state law claim. On this record, we cannot agree.

The district court properly dismissed the plaintiffs' federal claims based on the defendant's summary judgment motion. The district court may have dismissed Seaman's state law claim after deciding not to exercise supplemental jurisdiction over that claim. *See Block v. First Blood Associates,* 988 F.2d 344, 351 (2d Cir.1993). Because none of the

**210**

proceedings below addressed the merits of Seaman's state law claim, and because the case was closed without any mention of that claim, we cannot know if the district court decided not to exercise supplemental jurisdiction over that claim. The court could have done so within its considerable discretion. Because the record is not clear that the court disposed of the state law claim in that manner, we must remand to the district court with directions to clarify its decision as to the status of Seaman's state law claim.

### CONCLUSION

For the reasons stated above, we affirm the judgment of the district court and remand with directions to clarify its decision as to Seaman's state law claim.